## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

**ANTHONY ROGELIO GRIEGO,**

      **Petitioner,**

**v.**                                **Case No. 3:17cv66-LC/CAS**

**MARK S. INCH, Secretary,**
**Florida Department of**
**Corrections,**

      **Respondent.**
_____/

## REPORT AND RECOMMENDATION TO DENY § 2254 PETITION

On January 19, 2017, under the mailbox rule, Petitioner Anthony Rogelio Griego, proceeding pro se, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. ECF No. 1. Pursuant to leave of court, an amended petition was filed on March 16, 2017. ECF No. 7. The Respondent was ordered to file an answer, motion, or other response to the petition. ECF No. 8. On December 20, 2017, Respondent filed a motion to dismiss the § 2254 petition as untimely. ECF No. 20 (with exhibits). That motion was denied on June 14, 2018, and Respondent was directed to file an answer. ECF No. 31. On September 11, 2018, Respondent filed a motion to dismiss contending that two of Petitioner's

claims were unexhausted, thus creating a mixed petition.  ECF No. 38.

Petitioner filed a reply to the motion to dismiss on November 15, 2018.

ECF No. 41.  On January 3, 2019, the second motion to dismiss was

denied and Respondent was directed to file an answer to the amended

§ 2254 petition.  ECF No. 44.  Respondent filed an answer on February 27,

2019, with record exhibits.  ECF No. 47.  Petitioner filed a reply and

appendix to reply on June 14, 2019.  ECF Nos. 57, 59.

The matter was referred to the undersigned United States Magistrate

Judge for report and recommendation pursuant to 28 U.S.C. § 636 and

Northern District of Florida Local Rule 72.2(B).  After careful consideration

of all the issues raised, the undersigned has determined that no evidentiary

hearing is required for disposition of this case.  *See* Rule 8(a), R. Gov.

§ 2254 Cases in U.S. Dist. Cts.  On June 19, 2019, Petitioner filed a motion

to conduct discovery, for financial assistance to hire an expert, for

appointment of counsel, and to supplement the record with material not

presented in the state court.  ECF No. 58.  Petitioner previously filed a

similar motion on May 23, 2018, which was denied.  ECF Nos. 30, 33.

Petitioner's current motion, ECF No. 58, should also be denied.

For the reasons set forth herein, the pleadings and attachments

before the Court show that Petitioner is not entitled to federal habeas relief

and grounds One through Nine of the amended § 2254 petition should be denied.  Ground Ten should be dismissed for lack of jurisdiction.

## Background and Procedural History

Defendant was charged by Amended Information filed on November 6, 2007, with Count One, DUI Manslaughter of Gerran Clayton Copeland in Santa Rosa County, Florida, on August 19, 2007, in violation of sections 316.193(1) and 316.193(3)(a), (b), (c)(3)a, Florida Statutes.  Ex. B1 at 25.[1] He was also charged with Count Two, leaving the scene of a crash involving a death in violation of section 316.027(1)(b), Florida Statutes, and Count Three, resisting an officer without violence.  *Id.*  After a plea of guilty as charged to the offenses, Defendant was sentenced on April 23, 2008, to 13 years in prison for Count One, 8 years in prison for Count Two, consecutive to the sentence in Count One, and 270 days in jail for Count Three, concurrent to the sentence in Count One.  Ex. B1 at 31, 42-48.

Petitioner appealed to the state First District Court of Appeal and his counsel filed an Anders brief.[2]  Ex. B4 at 7.  Petitioner was given leave to file a pro se brief.  Ex. B4B.  Another initial brief by different counsel was

---

[1] Hereinafter, citations to the state court record, "Ex. –," refer to exhibits A through I2 submitted in conjunction with Respondent's answer.  *See* ECF No. 47.

[2] Anders v. California, 386 U.S. 738 (1967) (requiring appointed counsel who finds an appeal to be wholly frivolous to advise the court but submit a brief referring to anything in the record that might arguably support an appeal).

filed pursuant to <u>Anders</u>.  Ex. B4C.  The appellate court affirmed per curiam

without written opinion on February 25, 2010.  Ex. B5.  The mandate was

issued on March 23, 2010.  Ex. B6.  *See* <u>Griego v. State</u>, 29 So. 3d 1121

(Fla. 1st DCA 2010) (table).

On May 24, 2010, Petitioner, with counsel, filed a motion for

modification of sentence.  Ex. D1 at 4-18.  No formal order disposing of the

motion appears in the record.  However, circuit court notes indicate

Petitioner was given a hearing on a motion for modification of sentence on

June 29, 2011, and the motion was denied on that date.  Ex. D1 at 42.

On February 16, 2012, Petitioner filed a petition for writ of habeas

corpus in the First District Court of Appeal alleging ineffective assistance of

appellate counsel.[3]  Ex. C1.  The petition was denied on the merits on

March 8, 2012.  Ex. C2.  *See* <u>Griego v. State</u>, 81 So. 3d 615 (Fla. 1st DCA

2012) (mem).

Petitioner filed a Motion for Postconviction Relief pursuant to Florida

Rule of Criminal Procedure 3.850 on March 22, 2012, under the mailbox

rule, in which he alleged fourteen grounds for relief.  Ex. D1 at 47-77.  An

---

[3] The claim raised in the petition alleging ineffective assistance of appellate counsel was: failing to raise as fundamental error a claim that Petitioner was denied due process in the sentencing hearing, after his plea, when the court imposed a harsher sentence based on consideration of Petitioner's continued assertion of innocence to leaving the scene of the crash.  Ex. C1.

order was entered on May 16, 2012, striking the pro se motion for

postconviction relief with leave to amend to encompass all the post-

conviction matters Petitioners sought to raise.  Ex. D1 at 80.  Petitioner filed

an Amended Motion for Postconviction Relief on June 29, 2012, Ex. D1 at

84-119, and a "Final Amendment to Defendant's Previously Filed

'Amended' Motion for Postconviction Relief with Incorporated Memorandum

of Law," alleging fourteen grounds, on May 9, 2013.[4]  Ex. D1 at 160-97.

The postconviction court entered an order on February 17, 2014,

setting an evidentiary hearing on all of Petitioner's claims except ground

two, which challenged the adequacy of the plea colloquy.  Ex. D2 at 226-

29.  Counsel was appointed, Ex. D2 at 227, and an evidentiary hearing was

held on January 27, 2015.  Ex. D4.  The post-conviction motion was

---

[4] The grounds raised in Petitioner's final amended motion for post-conviction relief were: (1) ineffective assistance of defense counsel (IAC) for misadvice re sentence; (2) trial court held an inadequate plea colloquy rendering plea involuntary; (3) IAC in defense counsel's failure to advise Petitioner of a right to withdraw his plea; (4) Brady violation in failing to disclose exculpatory evidence; (5) misadvice of counsel re defense based on required knowledge of death prior to leaving the scene; (6) IAC in failing to understand the plea deal and misinterpreting the telephone records, precluding Petitioner from pursuing an effective trial strategy; (7) IAC in failing to advise Petitioner that his post-arrest statements could be suppressed; (8) IAC in misadvising Petitioner his prior arrests could be used against him at trial; (9) IAC in failing to advise Petitioner that his blood test results could be suppressed as violation of Fourth Amendment; (10) IAC in failing to advise Petitioner of favorable evidence that would have corroborated his defense; (11) IAC in failing to object to discovery violation; (12) IAC in allowing Petitioner to plead guilty to leaving the scene of a crash where no factual basis existed; (13) IAC in failing to investigate the State's expert witness; and (14) cumulative error denied a fair proceeding.  Ex. D1 at 162-95

denied, D2 at 254-400, and a timely appeal followed.[5]  On November 9, 2016, the First District Court of Appeal affirmed per curiam without a written opinion.  Ex. D9.  Rehearing was denied January 5, 2017.  Ex. D11.  The mandate was issued January 23, 2017.  Ex. D12.  *See* Griego v. State, 207 So. 3d 224 (Fla. 1st DCA 2016) (table).

On January 17, 2017, Petitioner filed a pro se motion to correct illegal sentence pursuant to Florida Rule of Criminal Procedure 3.800(a) alleging three grounds.[6]  Ex. F1 at 1-5.  An amended motion to correct sentence with similar claims was filed on March 14, 2017.  Ex. F1 at 52-59.  The trial court granted in part and denied in part the amended motion, removing a special condition that permanently revoked Petitioner's driver's license as to Count 2.  Ex. F1 at 67-70.  Petitioner appealed to the state First District Court of Appeal, which affirmed per curiam without opinion on July 12, 2017.  Ex. F4.  The mandate was issued on August 31, 2017.  Ex. F7.  *See* Griego v. State, 228 So. 3d 555 (Fla. 1st DCA 2017) (table).

---

[5] Petitioner appealed denial of his post-conviction claims 2, 9(b), 3, 4, 5, 12, and 13.  *See* Ex. D6.

[6] The grounds raised in the motion to correct sentence were: (1) the sentence contains unauthorized special conditions; (2) the trial court unlawfully retained jurisdiction through probation; and (3) the sentence was cruel and unusual in violation of the Eighth Amendment.  Ex. F1 at 1-5.

On March 6, 2017, Petitioner filed a pro se amended second or successive motion for post-conviction relief alleging four grounds.[7]  Ex. G1 at 31-60.  The post-conviction court denied the claims on May 9, 2017.  Ex. G1 at 102-60.  Petitioner filed a belated motion for rehearing, which was dismissed, but the appellate court granted a belated appeal.  Ex. G7.  Petitioner appealed the denial of the second or successive Rule 3.850 motion.[8]  Ex. G9.  The appellate court affirmed per curiam without opinion on November 21, 2018, and the mandate was issued on December 19, 2018.  Exs. G11, G12.  *See* Griego v. State, 258 So. 3d 389 (Fla. 1st DCA 2018) (table).

On August 1, 2017, Petitioner filed a second Petition for Writ of Habeas Corpus in the state First District Court of Appeal.  Ex. H1.  The appeal was denied "on the merits" on August 24, 2017.  Ex. H2.  *See* Griego v. State, 232 So. 3d 982 (Fla. 1st DCA 2017) (table).  Petitioner's petition to invoke all writs/habeas corpus filed in the Florida Supreme Court was dismissed for lack of jurisdiction on October 30, 2017.  Exs. I1, I2.

---

[7] The grounds raised in the second or successive Rule 3.850 motion were: (1) conviction for resisting a blood draw violated the Fourth Amendment; (2) newly discovered evidence that plea was involuntary; (3) sentence violates the Eighth Amendment prohibition against cruel and unusual punishment; and (4) no factual basis for his guilty plea to leaving the scene of a crash.  Ex. G1 at 31-60.

[8] Petitioner appealed denial of the four successive claims listed in note 7, *supra*. Ex. G 9.

Petitioner filed his Amended Petition for Writ of Habeas Corpus under

28 U.S.C. § 2254 raising ten grounds.  ECF No. 7.

## Analysis

Pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and

Effective Death Penalty Act of 1996 (AEDPA), federal courts may grant

habeas corpus relief for persons in state custody only under certain

specified circumstances.  Section 2254(d) provides in pertinent part:

> An application for a writ of habeas corpus on behalf of a person
> in custody pursuant to the judgment of a State court shall not
> be granted with respect to any claim that was adjudicated on
> the merits in State court proceedings unless the adjudication of
> the claim—
>
> > (1) resulted in a decision that was contrary to, or
> > involved an unreasonable application of, clearly
> > established Federal law, as determined by the
> > Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an
> > unreasonable determination of the facts in light of
> > the evidence presented in the State court
> > proceeding.

28 U.S.C. § 2254(d).  *See also* Cullen v. Pinholster, 563 U.S. 170, 181

(2011); Gill v. Mecusker, 633 F.3d 1272, 1287 (11th Cir. 2011).

"Under the 'contrary to' clause, a federal habeas court may grant the

writ if the state court arrives at a conclusion opposite to that reached by this

Court on a question of law or if the state court decides a case differently

than this Court has on a set of materially indistinguishable facts." Williams

v. Taylor, 529 U.S. 362, 412-13 (2000) (O'Connor, J., concurring). "Under

the 'unreasonable application' clause, a federal habeas court may grant the

writ if the state court identifies the correct governing legal principle from this

Court's decisions but unreasonably applies that principle to the facts of the

prisoner's case." *Id.* at 413 (O'Connor, J., concurring).

The Supreme Court has explained that "even a strong case for relief

does not mean the state court's contrary conclusion was unreasonable."

Harrington v. Richter, 562 U.S. 86, 102 (2011). The Court stated:

> As amended by AEDPA, § 2254(d) stops short of imposing a
> complete bar on federal-court relitigation of claims already
> rejected in state proceedings. . . . It preserves authority to
> issue the writ in cases where there is no possibility fairminded
> jurists could disagree that the state court's decision conflicts
> with this Court's precedents. It goes no further. Section
> 2254(d) reflects the view that habeas corpus is a "guard against
> extreme malfunctions in the state criminal justice systems," not
> a substitute for ordinary error correction through appeal.
> Jackson v. Virginia, 443 U.S. 307, 332, n.5 (1979) (Stevens, J.,
> concurring in judgment). As a condition for obtaining habeas
> corpus from a federal court, a state prisoner must show that the
> state court's ruling on the claim being presented in federal court
> was so lacking in justification that there was an error well
> understood and comprehended in existing law beyond any
> possibility for fairminded disagreement.

*Id.* at 102-03 (citation omitted). The federal court employs a " 'highly

deferential standard for evaluating state-court rulings, which demands that

state-court decisions be given the benefit of the doubt.' " Pinholster, 563

U.S. at 181 (quoting Woodford v. Visciotti, 537 U.S. 19, 24 (2002)).

"Before a federal court may grant habeas relief to a state prisoner,

the prisoner must exhaust his remedies in state court." O'Sullivan v.

Boerckel, 526 U.S. 838, 842 (1999); 28 U.S.C. § 2254(b).  The Petitioner

must have apprised the state court of the federal constitutional claim, not

just the underlying facts of the claim or a "somewhat similar state-law

claim." Snowden v. Singletary, 135 F.3d 732, 735 (11th Cir. 1998) (quoting

Anderson v. Harless, 459 U.S. 4, 5-6 (1982)).  In order for remedies to be

exhausted, "the petitioner must have given the state courts a 'meaningful

opportunity' to address his federal claim." Preston v. Sec'y, Fla. Dep't of

Corr., 785 F.3d 449, 457 (11th Cir. 2015) (quoting McNair v. Campbell, 416

F.3d 1291, 1302 (11th Cir. 2005)).  Petitioner must "fairly present" his claim

in each appropriate state court in order to alert the state courts to the

federal nature of the claim.  Duncan v. Henry, 513 U.S. 364, 365 (1995);

Picard v. Connor, 404 U.S. 270, 275 (1971); O'Sullivan v. Boerckel, 526

U.S. 838, 845 (1999).  The State must have been provided the

" 'opportunity to pass upon and correct' alleged violations of its prisoners'

federal rights." Henry, 513 U.S. at 365 (quoting Picard, 404 U.S. at 275

(citation omitted)).  "This rule of comity reduces friction between the state

and federal court systems by avoiding the 'unseem[liness]' of a federal district court's overturning a state court conviction without the state courts having had an opportunity to correct the constitutional violation in the first instance." <u>O'Sullivan</u>, 526 U.S. at 845; *see also* <u>Picard</u>, 404 U.S. at 275 ("If the exhaustion doctrine is to prevent 'unnecessary conflict between courts equally bound to guard and protect rights secured by the Constitution,' it is not sufficient merely that the federal habeas applicant has been through the state courts." (citation omitted)).

In regard to claims of ineffectiveness of trial counsel, the Petitioner must have presented those claims in state court " 'such that a reasonable reader would understand each claim's particular legal basis and factual foundation.' " <u>Ogle v. Johnson</u>, 488 F.3d 1364, 1368 (11th Cir. 2007) (citing <u>McNair</u>, 416 F.3d at 1302).

In order to obtain review where a claim is unexhausted and, thus, procedurally defaulted, the Petitioner must show cause for the default and prejudice resulting therefrom or a fundamental miscarriage of justice. <u>Tower v. Phillips</u>, 7 F.3d 206, 210 (11th Cir. 1993). In order to demonstrate cause, Petitioner must show that an "external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim."

Alderman v. Zant, 22 F.3d 1541, 1551 (1994) (citing Murray v. Carrier, 477 U.S. 478, 488 (1986)); *see also* McCleskey v. Zant, 499 U.S. 467, 497 (1991) (emphasizing that the external impediment must have prevented the petitioner from raising the claim). A federal court may grant a habeas petition on a procedurally defaulted claim without a showing of cause or prejudice if necessary to correct a fundamental miscarriage of justice. Henderson v. Campbell, 353 F.3d 880, 892 (11th Cir. 2003). In order to satisfy the miscarriage of justice exception, the Petitioner must show that a constitutional violation has occurred that "probably resulted in a conviction of one who is actually innocent"—that it is more likely than not that no reasonable juror would have convicted him—which is a stronger showing than is necessary to establish prejudice. *See* Schlup v. Delo, 513 U.S. 298, 327 (1995). This standard "thus ensures that petitioner's case is truly 'extraordinary.' " *Id.* (citing McCleskey, 499 U.S. at 494). Such a case is "extremely rare." Schlup, 513 U.S. at 324.

This Court's review "is limited to the record that was before the state court that adjudicated the claim on the merits." Pinholster, 563 U.S. at 181. The state court's factual findings are entitled to a presumption of correctness and to rebut that presumption, the Petitioner must show by clear and convincing evidence that the state court determinations are not

fairly supported by the record.  *See* 28 U.S.C. § 2254(e)(1).  However, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions" and "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).  *See also* Swarthout v. Cooke, 562 U.S. 216, 222 (2011) ("[W]e have long recognized that 'a "mere error of state law" is not a denial of due process.' " (quoting Engle v. Isaac, 456 U.S. 107, 121, n.21 (1982))).

Further, under § 2254(d), federal courts have "no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them."  Marshall v. Lonberger, 459 U.S. 422, 434 (1983).  "Determining the credibility of witnesses is the province and function of the state courts, not a federal court engaging in habeas review."  Consalvo v. Sec'y, Dep't of Corr., 664 F.3d 842, 845 (11th Cir. 2011).  Credibility and demeanor of a witness are considered to be questions of fact entitled to a presumption of correctness under the AEDPA and the Petitioner has the burden to overcome the presumption by clear and convincing evidence.  *Id.*

For claims of ineffective assistance of counsel, the United States

Supreme Court has adopted a two-part test:

> First, the defendant must show that counsel's performance was
> deficient.  This requires showing that counsel made errors so
> serious that counsel was not functioning as the "counsel"
> guaranteed the defendant by the Sixth Amendment.  Second,
> the defendant must show that the deficient performance
> prejudiced the defense.  This requires showing that counsel's
> errors were so serious as to deprive the defendant of a fair trial,
> a trial whose result is reliable.

Strickland v. Washington, 466 U.S. 668, 687 (1984).  To demonstrate

deficient performance, a "defendant must show that counsel's performance

fell below an objective standard of reasonableness."  *Id.* at 688.  Counsel is

"strongly presumed to have rendered adequate assistance and made all

significant decisions in the exercise of reasonable professional judgment."

Burt v. Titlow, 134 S. Ct. 10, 17 (2013) (quoting Strickland, 466 U.S. at

690).  Federal courts are to afford "both the state court and the defense

attorney the benefit of the doubt."  *Id.* at 13.  The reasonableness of

counsel's conduct must be viewed as of the time of counsel's conduct.  *See*

Maryland v. Kulbicki, 136 S. Ct. 2, 4 (2015) (citing Strickland, 466 U.S. at

690).

To demonstrate prejudice under Strickland, a defendant "must show

that there is a reasonable probability that, but for counsel's unprofessional

errors, the result of the proceeding would have been different."  466 U.S. at

694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.*  For this Court's purposes, "[t]he question 'is not whether a federal court believes the state court's determination' under the <u>Strickland</u> standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.' "  <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123 (2009) (quoting <u>Schriro v. Landrigan</u>, 550 U.S. 465, 473 (2007)).  "And, because the <u>Strickland</u> standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard."  <u>Mirzayance</u>, 556 U.S. at 123. It is a "doubly deferential judicial review that applies to a <u>Strickland</u> claim evaluated under the § 2254(d)(1) standard."  *Id.*  Both deficiency and prejudice must be shown to demonstrate a violation of the Sixth Amendment.  Thus, the court need not address both prongs if the petitioner fails to prove one of the prongs.  <u>Strickland</u>, 466 U.S. at 697.

### Ground 1: Ineffective Assistance of Appellate Counsel

Petitioner contends that appellate counsel rendered ineffective assistance by failing to raise as fundamental error a claim that Petitioner was denied a fair sentencing hearing.  ECF No. 7 at 5.  He argues that the sentencing court, in imposing sentence after Petitioner's plea, improperly relied on his profession of innocence of the offense of leaving the scene of

the crash made during the sentencing hearing.  *Id.*  Respondent contends

the claim is unexhausted and, thus, procedurally defaulted because

Petitioner did not raise any specific federal constitutional ground for his

ineffective assistance of appellate counsel claim in state court.  ECF No. 47

at 11.

Petitioner filed a petition for writ of habeas corpus in the state First

District Court of Appeal alleging that appellate counsel rendered ineffective

assistance by not raising a fundamental error due process claim that the

court considered "constitutionally impermissible factors" at sentencing.  Ex.

C1 at 7-8.  Respondent is correct that Petitioner cited only state law cases

in support of his petition for writ of habeas corpus.  The Eleventh Circuit

has explained:

> "It is not sufficient merely that the federal habeas petitioner has
> been through the state courts . . . nor is it sufficient that all the
> facts necessary to support the claim were before the state
> courts or that a somewhat similar state-law claim was made."
> Kelley [v. Sec'y for Dept. of Corr., 377 F.3d 1317, 1343-44]
> (citing Picard, 404 U.S. at 275-76 and Anderson v. Harless, 459
> U.S. 4, 6, 103 S. Ct. 276, 277, 74 L. Ed. 2d 3 (1982)).  Rather,
> in order to ensure that state courts have the first opportunity to
> hear all claims, federal courts "have required a state prisoner to
> present the state courts with the same claim he urges upon the
> federal courts."  Picard, 404 U.S. at 275, 92 S. Ct. at 512
> (citations omitted).  While we do not require a verbatim
> restatement of the claims brought in state court, we do require
> that a petitioner presented his claims to the state court "such
> that a reasonable reader would understand each claim's
> particular legal basis and specific factual foundation."  Kelley,

377 F.3d at 1344-45 (citing <u>Picard</u>, 404 U.S. at 277, 92 S. Ct. at 513).

<u>McNair v. Campbell</u>, 416 F.3d 1291, 1302 (11th Cir. 2005).

In his petition in the state appellate court, Petitioner cited numerous state cases in support of his contention. *See* Ex. C1 at 7-10. Petitioner did not cite the Sixth Amendment or the Fourteenth Amendment as a basis for relief in state court and none of the cases cited rely on the federal Constitution or any federal case law. In fact, in one of the cases cited by a case discussed in the petition, the Florida court relied on Art. I, § 9, of the Florida Constitution in finding a violation of due process. *See* <u>Holton v. State</u>, 573 So. 2d 284, 291 (Fla. 1990), cited in <u>Bracero v. State</u>, 10 So. 3d 664, 665 (Fla. 2d DCA 2009). Because Petitioner did not allege any federal constitutional violation, or any federal statutory or constitutional support, for his claim in state court that appellate counsel rendered ineffective assistance, the claim is unexhausted and procedurally defaulted because he may not now return to state court to exhaust the federal claim.[9]

---

[9] Florida Rule of Appellate Procedure 9.141 provides that a petition alleging ineffective assistance of appellate counsel on direct review be filed no later than four years after the judgment and sentence become final on direct review. This occurred on March 23, 2010. Thus, Petitioner cannot return to the state court to reassert this claim as a federal claim.

Regardless of the procedural default, the claim is without merit and should be denied.[10]  The state appellate court adjudicated this claim on the merits.  *See* Griego v. State, 81 So. 3d 615 (Fla. 1st DCA 2012) (mem). That adjudication was not contrary to any federal law or an unreasonable application of federal law.  "Claims of ineffective assistance of appellate counsel are governed by the same standards applied to trial counsel under Strickland."  Philmore v. McNeil, 575 F.3d 1251, 1264 (11th Cir. 2009).  In considering the reasonableness of counsel's decision not to raise a particular issue, the Court considers all the circumstances and gives great deference to counsel's judgment.  *Id.* at 1265.  Appellate counsel does not perform deficiently for failing to raise every non-frivolous ground for appeal. Smith v. Robbins, 528 U.S. 259, 288 (2000).  To determine if prejudice has been shown, the court must "first review the merits of the omitted claim." Philmore, 575 F.3d at 1264-65.  Petitioner must show that there is a reasonable probability of success on appeal.  *Id.* at 1265.

In this case, Petitioner argues that appellate counsel should have argued fundamental error, but he has not demonstrated that such a claim

---

[10] Denial of unexhausted § 2254 claims on the merits is specifically anticipated by 28 U.S.C. § 2254(b)(2), which provides that "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust remedies available in the courts of the state."

would have had a reasonable probability of success on appeal.  Because counsel made no objection to the trial court's alleged consideration of his claim of innocence to the charge of leaving the scene of the crash, Petitioner was required to demonstrate fundamental error in order to assert that claim on appeal.  *See* Hannum v. State, 13 So. 3d 132, 135 (Fla. 2d DCA 2009) ("[F]or an error to be so fundamental that it can be raised for the first time on appeal, the error must be basic to the judicial decision under review and equivalent to a denial of due process.") (citations and quotation marks omitted).

Under Florida law, "[f]undamental error occurs where a trial court considers constitutionally impermissible factors when imposing a sentence."  *See also* Yisrael v. State, 65 So. 3d 1177, 1177 (Fla. 1st DCA 2011).  In Florida, at the time of Petitioner's sentences, a sentencing court could not consider or use against a defendant his assertion of innocence and refusal to admit guilt.  Ritter v. State, 885 So. 2d 413, 414 (Fla. 1st DCA 2004).[11]  The stated reasons for the general rule prohibiting a court from considering lack of remorse or protestation of innocence was to

---

[11] The court in Davis v. State, 268 So. 3d 958 (Fla. 1st DCA 2019), recently receded from the view that remorse could only be considered in mitigation, holding instead that lack of remorse is a valid sentencing consideration.  *Id.* at  966, *review granted* Davis v. State, SC19-716, 2019 WL 2427789, at *1 (Fla. Jun. 11, 2019).

ensure the defendant is not unfairly punished for pleading not guilty and exercising his right to trial.  Corbitt v. State, 220 So. 3d 446, 450-51 (5th DCA 2016).  Where a defendant freely and voluntarily enters a plea and admitted under oath his involvement in the crimes, consideration of lack of remorse or failure to take responsibility has been held not to be error.  *Id.* at 450-51.  Petitioner entered a guilty plea to the charges in this case.

In Petitioner's state habeas petition, the state appellate court denied the claim on the merits.  Thus, in rejecting this claim of ineffective assistance of appellate counsel on the merits, the state appellate court necessarily determined that the allegation of sentencing error was not shown to be reversible fundamental error.  Thus, even if appellate counsel had raised the claim on direct appeal, Petitioner cannot show that it would have had a reasonable chance of success.

This Court must defer to the state court's interpretation of its own law: "a state court's interpretation of state law . . . binds a federal court sitting in habeas corpus."  Bradshaw v. Richey, 546 U.S. 74, 76 (2005).  *See also* Herring v. Sec'y, Dep't of Corr., 397 F.3d 1338, 1354-55 (11th Cir. 2005) ("The Florida Supreme Court already has told us how the issues would have been resolved under Florida state law had [petitioner's counsel] done what [petitioner] argues he should have done . . . .  It is a 'fundamental

principle that state courts are the final arbiters of state law, and federal

habeas courts should not second-guess them on such matters.' ") (quoting

Agan v. Vaughn, 119 F.3d 1538, 1549 (11th Cir. 1997)).

Further, the state court's adjudication of this claim was not objectively

unreasonable because the record demonstrates that the trial court did not

rely on Petitioner's lack of remorse or failure to take responsibility in giving

him a harsher sentence.  On February 11, 2008, Petitioner entered a plea

of guilty to leaving the scene of the crash involving death and failing to

render aid or forthwith report the crash to police.  Ex. B2 at 7 (transcript

pagination).  Petitioner confirmed at the plea hearing that he would not

thereafter be able to say he did not commit the crime.  *Id.*  At the

sentencing hearing on April 23, 2008, Petitioner stated:

> The officers' statements contradict theirselves and the
> store clerk statement contradicts himself.  I wasn't a mile down
> the road or even two miles down the road.  No one had to come
> looking for me, and I never tried to run.  The best thing I could
> have done was go to that store.  It was the only thing that I
> could have done.
>
> I didn't call 911, because I didn't realize what I had hit.
> Even in the police reports it plainly shows I didn't know.  It didn't
> occur to me that it could have been a human being because of
> the time of night it was.  Yes, my behavior that night was
> unacceptable; but when I was told that it was a young boy that I
> hit, I went into shock.  I panicked, I freaked.  I was in disbelief.
>
> I was told that you [victim's family] wanted me to plead
> guilty, so that's what I did in hopes that I will bring comfort to
> you and your family.  Mr. and Mrs. Copeland, I'm sorry for

making the mistake that I did.  I'm sorry for causing you pain.
Please understand and please know I never meant to leave
your son Gerran behind.  Please forgive me.
          . . . .
If I had known that it was a person that I hit that night, my
actions would have been different.  I would have dialed 911
immediately.  I would have went back.  I would have tried to
revive him.  I would have did whatever I could to help him.  I
was not trying to run from anything.  My heart and God would
not allow it.

Ex. B3 at 225-27.  The prosecutor argued that based on his guilty pleas,

Petitioner faced 46 years in prison on the three counts.  Ex. B3 at 231-32.

She noted that the minimum sentence calculated on the sentencing

scoresheet was just over 12 years for the three counts.  *Id.* at 232.  The

prosecutor urged the court to impose more than the minimum sentence,

stating, "I was disappointed to hear that Mr. Griego is not admitting that he

knew he left Gerran [the victim] on the side of the road.  The evidence

suggests otherwise."  *Id.* at 234.  She went on to explain that the evidence

would show Petitioner was intoxicated when he drove over the lane of

travel and struck the victim on his bicycle.  The prosecutor argued that

Petitioner drove to a convenience store not call 911 but to call a coworker.

The clerk noticed the damage to Petitioner's work van, including a

smashed windshield, front end damage, and deployed air bags, one of

which had the victim's blood on it.  *Id.* at 235, 240.  The prosecutor stated

that Petitioner told the store clerk that he ran off the road and hit someone,

but laughed and amended it to "I hit something."  *Id.* at 236.  The

prosecutor noted that when the police came, Petitioner resisted them and

did not cooperate, charges to which he pleaded guilty.  *Id.* at 243-44.  The

prosecutor commented that "the fact that he continues to deny that he

knew that he left Gerran today is disturbing and further reason why he

should not receive a minimum guideline sentence."  *Id.* at 244.

The court sentenced Petitioner to 13 years for Count One, 8 years

consecutive for Count Two, followed by ten years probation, and 270 days

for Count Three, concurrent to the sentence in Count One.  *Id.* at 259-61.

The judge's reasoning for the sentences was stated in pertinent part as

follows:

> The penalty that's imposed by the Court should be
> commensurate with the severity of the offense and the
> circumstances that surround the offense.  A trial court judge
> may make a downward departure from the recommended
> guidelines only when the circumstances or factors reasonably
> justify or mitigate a guideline sentence.
>
> I've considered the facts that were presented today, and
> you also testified under oath.  Your attorney had you put under
> oath.  Therefore I would consider those of evidence.  I do not
> find the evidence presented provides a reasonable basis or
> justification to mitigate the guideline sentence, therefore any
> downward departure is denied.
>
> You've had some prior past experience with criminal
> convictions including substance abuse.  Some people may call
> this a tragic accident.  It is not an accident.  You chose to drive
> drunk, you chose to get behind the wheel of that car, you went
> over the fog line, and you struck and killed a 17-year-old young

man.  I call him a young man because he seemed to be a fine
person from everything I've heard today.

From what I understand from the presentence report that
young man's body was hurled over 200 feet from the point of
impact, and you left the scene of the accident, and left that
young man to die in the dark.  Now, I don't know whether he
was dead at the time of impact or not, but his body was left on
the side of the road.  And had it not been for an alert
convenience store clerk that saw the damage to your car and
called for emergency assistance - - something you did not do
although you had the opportunity to do it - - you attempted to
use the phone in the convenience store, and you then took
change to go outside and make a phone call.  And unless I'm
wrong most of these phones will allow you to call 911 without
any type of coins.

Also I do not believe you went outside to make any calls
for 911.  You didn't say it, but I don't believe it was happening
anyway, because I'm sure you would have reported something
to the store clerk rather than saying you hit somebody or
something on the road.

Ex. B3 at 257-58.  Nowhere in the judge's comments discussing the

circumstances of the offenses to which Petitioner pled guilty and his

reasons for the sentences imposed did the judge mention lack of remorse

or Petitioner's claims of innocence of leaving the scene of the crash as a

reason to impose a more severe sentence.  The court never mentioned

Petitioner's lack of remorse or claims of innocence, but simply highlighted

the facts and circumstances of the offenses as explanation for the decision

not to mitigate the possible sentence by a downward departure or

imposition of the minimum sentence.

The fact that the prosecutor stated that she was troubled by Petitioner's assertion of innocence and argued that it be considered when deciding whether to impose a minimum sentence does not mean the court improperly relied on that consideration to impose a harsher sentence.  The sentences were within the guideline range and have not been shown to have been based on any constitutionally impermissible factors.

Because the state court considered this claim and found it to be without merit under Florida law, and because Petitioner did not demonstrate that the sentencing court imposed his sentence based on consideration of constitutionally impermissible sentencing factors, he has failed to establish that appellate counsel was ineffective for not raising a fundamental error claim of this sentencing issue on direct appeal.  And for the same reasons, notwithstanding the procedural default of his claim of error, he fails to demonstrate entitlement to § 2254 relief on the basis that the trial court violated his due process rights.  Relief on Ground 1 should be denied.

### **Ground 2: Involuntary Plea Due to Inadequate Plea Colloquy**

Petitioner contends that he was provided an inadequate plea colloquy in that the court failed to advise him of the maximum possible sentence for each charge as required by Florida Rule of Criminal Procedure 3.172 and

that the error rendered his plea involuntary.  ECF No. 7 at 7.  He also

argues that he was not asked if anyone had made him any promises as to

what sentence he might receive.  *Id.* at 8.  Petitioner raised a similar claim

in his final amended Rule 3.850 motion where he argued that the plea

colloquy was inadequate because it failed to advise him of the maximum

possible penalty he faced and failed to inquire if he had been promised

anything, rendering the plea involuntary and subject to withdrawal.  Ex. D1

at 165.  The state court found the claim facially insufficient.  Ex. D2 at 263.

Although the post-conviction court recognized that Petitioner was claiming

the plea was involuntary and subject to withdrawal due to an inadequate

plea colloquy, the court concluded that the claim asserted trial court error

that was not cognizable in a motion for post-conviction relief.  *Id.*  The court

also stated, "As Defendant has already been given the opportunity to

amend his motion and this claim remains facially insufficient, the Court

chooses to deny this claim with prejudice."  *Id.* at 263-64.  Petitioner

appealed denial of this claim in the First District Court of Appeal, citing

cases that hold challenges to the voluntariness of a plea based on the

court's failure to properly advise the defendant of the consequences of his

plea are cognizable in Rule 3.850 proceedings.  Ex. D6 at 12-13.  *See,*

*e.g.*, Marckman v. State, 997 So. 2d 1275, 1276 (Fla. 2d DCA 2009).  The

state appellate court affirmed denial of relief on the claim without discussion. Ex. D9.

Petitioner argued to the state post-conviction court that the trial court's colloquy in accepting his guilty plea was inadequate under Florida Rule of Criminal Procedure 3.172 and Florida case law interpreting the provisions of the rule. Rule 3.172 requires that before accepting a plea of nolo contendere or guilty, in order to determine that the plea is voluntary, the judge must first determine that the defendant understands the nature of the charge to which a plea is offered, the maximum possible penalty, and any mandatory minimum penalty. Fla. R. Crim P. 3.172(a), (c)(1).

Respondent contends that the claim is unexhausted and procedurally defaulted because when he raised a similar claim in state court, he failed to allege any federal constitutional grounds in the post-conviction court and on appeal from denial of relief. ECF No. 47 at 14-15. Notwithstanding any failure to exhaust the claim or the trial court's determination that the claim was insufficiently pled, it is without merit and should be denied.

Petitioner entered an open plea to the charges after reviewing and signing a form titled Sentencing Recommendation on February 11, 2008. Ex. B1 at 34-37; Ex. B2. The form is also a plea agreement form, although it indicates that Petitioner had no agreement with the State as to a

sentence.  Ex. B1 at 34.  In the form, Petitioner confirmed by his signature that he had read the information and understood the charges.  *Id.*  The form stated at the top that he was to plead to DUI manslaughter, leaving the scene of a crash involving death, resisting an officer without violence, and careless driving (later dropped).  *Id.*  The form states the maximum penalties for each offense, including a maximum penalty of 30 years in prison for leaving the scene of the crash involving a death.  *Id.*  The form he signed expressly states: "I understand that the maximum period of imprisonment and fines, as well as any mandatory minimums that apply, with regard to the charges to which I am entering my plea are as indicated on page 1 of this agreement . . . .  I have reviewed the sentencing guidelines applicable to the cases to which I am entering a plea."[12]  *Id.*  Petitioner also confirmed that he understood that by entering a plea he was waiving, *inter alia*, his rights to plead not guilty; to go to trial by jury; to present any and all defenses he may have; and to appeal all matters relating to the judgement including guilt or innocence.  *Id.*  He confirmed that he was entering the plea voluntarily and not due to any threats or

---

[12] In spite of Petitioner's confirmation in the plea agreement that he understood the maximum penalties, he testified at the evidentiary hearing on his Rule 3.850 motion that he did not learn of the maximum penalty until after he entered his plea.  Ex. D4 at 15.  He also testified at the evidentiary hearing that he realized on January 31, 2008, that he was facing a maximum total sentence of 46 years.  Ex. D4 at 6.

promises.  *Id.*  The form expressly stated that "[M]y attorney, the Court and the prosecutor have not made any promises nor have I relied on any representations as to actual time I would serve in entering this plea agreement."  *Id.*

At the plea hearing, held on the same day that Petitioner signed the plea agreement sentencing recommendation form, Petitioner was placed under oath and testified that he had a chance to read the plea agreement and that he signed it.  Ex. B2 at 3-4.  He testified he understood all the terms of the agreement and had discussed it with his attorney, and agreed that his attorney had discussed the "range of punishments and our options, possible defenses in the case," and that he was comfortable with entering the plea of guilty.  *Id.* at 5-6.  Petitioner testified that no one had forced him to enter the plea agreement, and that he understood all the rights he was waiving.  *Id.* at 5.  Under Florida law, judges are not precluded from using preprinted forms as part of the plea colloquy, as long as the colloquy reflects that the defendant has intelligently understood the written information.  Hen Lin Lu v. State, 683 So. 2d 1110, 1112 (Fla. 4th DCA 1996).  Petitioner stated under oath that he read the plea agreement, which was signed by him that same day, and that he understood its terms.  He cannot go behind his sworn assertions in a plea colloquy.  *See* Ezer v.

State, 10 So. 3d 1175 (Fla. 4th DCA 2009); Denne v. Jones, No.

5:17cv124-MCR-CJK (N.D. Fla. Dec. 17, 2018), 2018 WL 7078581, at \*6-7,

*Report and Recommendation adopted*, No. 5:17cv124-MCR-CJK, 2019 WL

267333 (N.D. Jan. 17, 2019).

At the sentencing hearing more than two months later, on April 23,

2008, the court sentenced Petitioner not to the 30-year maximum sentence

for Count Two, but to eight years in prison for leaving the scene of the

crash involving a death.  Ex. B3 at 259.  Petitioner did not notify the court

that he was previously unaware of the maximum possible sentence for that

offense.

To the extent petitioner challenges his plea because the colloquy did

not comply with Fla. R. Crim. P. 3.172, he fails to state a basis for federal

habeas relief because such relief is available to correct only constitutional

injury.  *See* 28 U.S.C. § 2254(a).  The Supreme Court has made clear that

a "mere error of state law" is not a denial of due process.' " Swarthout v.

Cooke, 562 U.S. 216, 222 (2011) (quoting Engle v. Isaac, 456 U.S. 107,

121, n.21 (1982)).  "The habeas statute unambiguously provides that a

federal court may issue a writ of habeas corpus to a state prisoner only on

the ground that he is in custody in violation of the Constitution or laws or

treaties of the United States."  Swarthout, 562 U.S. at 219 (internal

quotations and citations omitted).  *See also* Estelle v. McGuire, 502 U.S.

62, 67-68 (1991) (holding that errors that do not infringe upon a defendant's

constitutional rights provide no basis for federal habeas corpus relief; "[I]t is

not the province of a federal habeas court to reexamine state-court

determinations on state-law questions.").  "The writ of habeas corpus . . .

was not enacted to enforce State-created rights."  Cabberiza v. Moore, 217

F.3d 1329, 1333 (11th Cir. 2000) (citation omitted); Tejada v. Dugger, 941

F.2d 1551, 1560 (11th Cir. 1991) ("Questions of state law rarely raise

issues of federal constitutional significance, because '[a] state's

interpretation of its own laws provides no basis for federal habeas corpus

relief, since no question of a constitutional nature is involved.' ") (quoting

Carrizales v. Wainwright, 699 F.2d 1053 (11th Cir. 1983)).

Even if Petitioner's claim that his plea was involuntary because the

trial court failed to advise him of the maximum penalty was not

unexhausted, his claim is judged not by the requirements of Rule 3.172 but

by the federal due process standard.  *See* Boykin v. Alabama, 395 U.S.

238, 243 (1969) ("The question of an effective waiver of a federal

constitutional right in a proceeding is of course governed by federal

standards.").  "A reviewing federal court may set aside a state court guilty

plea only for failure to satisfy due process."  Stano v. Dugger, 921 F.2d

1125, 1141 (11th Cir. 1991) (citing Boykin, 395 U.S. at 243-44).  Due

process requires, among other things, "that the defendant enter a guilty

plea that is 'voluntary' and that the defendant must make related waivers

'knowing[ly], intelligent[ly], [and] with sufficient awareness of the relevant

circumstances and likely consequences.' " United States v. Ruiz, 536 U.S.

622, 629 (2002) (alterations in original) (quoting Brady v. United States,

397 U.S. 742, 748 (1970)).  "[D]ispositions by guilty plea are accorded a

great measure of finality."  Blackledge v. Allison, 431 U.S. 63, 71 (1977).

Because a prisoner often "has everything to gain and nothing to lose from

filing a collateral attack upon his guilty plea," courts accord great deference

to a defendant's statements during a plea colloquy and are reluctant to

allow a defendant to go behind his own sworn testimony.  *Id.*

       To satisfy the federal standard, the record must affirmatively show

that  Petitioner "intelligently and understandingly" waived his constitutional

rights and had "a full understanding of what the plea connotes and of its

consequence."  Boykin, 395 U.S. at 242-44.  Based on the record in this

case, Petitioner cannot demonstrate that he was deprived of due process in

the entry of his plea or that he failed to be advised of the maximum

sentence he could receive for leaving the scene of the crash involving a

death.  He affirmed under oath that he understood his plea form and all the

information presented in it—including that he faced a possible 30-year sentence for the offense and that he had not been promised anything for entry of his guilty plea.  Petitioner's due process rights were honored in the plea process and sentencing.

Petitioner has failed to demonstrate that the adjudication of the state court resulted in a decision that is contrary to or involved an unreasonable application of any clearly established Federal law, as determined by the Supreme Court of the United States, or was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.  28 U.S.C. § 2254(d).  Relief on Ground 2 should be denied.

### Ground 3: Ineffective Assistance of Counsel Regarding Plea

Petitioner contends in Ground 3 that his defense counsel rendered ineffective assistance for failing to advise him of his procedural right to withdraw his plea prior to sentencing where his plea was entered based on a "mistake or misapprehension about sentencing possibilities" or on a "false assumption."  ECF No. 7 at 10.  He argues that the mistake or assumption was that the victim's family was going to recommend a favorable sentence during sentencing.  *Id.*  He raised a similar claim in his Rule 3.850 motion, Ex. D1 at 167, and was provided an evidentiary hearing on the claim.

Petitioner testified at the hearing that his attorney told him that the victim's family wanted him to plead guilty and that they would "recommend a sentence" and if he did not, they would recommend he get the maximum 46 years. Ex. D4 at 6. He said his attorney advised him the recommended sentence would likely be 15 or 16 years, "which was closer to the guideline sentence, which was 12 years." *Id.* at 12. Petitioner testified he advised his attorney several times that he did not want to plead guilty to leaving the scene of the crash resulting in a death. *Id.* at 8. When he entered his plea, the family did not recommend a sentence, but left it to the discretion of the court. *Id.* at 14. Petitioner testified that when he learned the maximum penalty for leaving the scene was 30 years, his lawyer never advised him he could seek to withdraw the plea before sentencing. *Id.* at 15, 17. He said he told his lawyer that he would argue his innocence at sentencing, which he did. *Id.* at 15-16.

Defense counsel testified at the evidentiary hearing that no sentencing offer was ever made by the State and he never told Petitioner there was a plea offer. *Id.* at 69. He did tell Petitioner that the minimum sentence without a departure was 12 years and the maximum was 46 years. *Id.* at 69-70. Counsel arranged a meeting between Petitioner's family and the victim's family to attempt to place Petitioner, who was also a

young man, in a more favorable light in hopes that the victim's family would recommend a lower sentence. *Id.* at 68. Counsel testified that he does not remember the family ever saying they would recommend or agree to 15 years and he never told Petitioner that he was going to get a sentence of 15 years. *Id.* at 70. He said the family told him they would think about what they would recommend. *Id.* Counsel testified that he actually thought it was more beneficial if the family did not make any sentencing recommendation. *Id.*

Defense counsel testified that the strategy was essentially to appeal to the victim's family such that they would not recommend a lengthy sentence. He stated, "We wanted them to just soften the blow. We wanted them to try - - we wanted to try to get them on our side as much as we could. And we knew they were going to be upset at court, but we wanted them to try to come in and not be harsh as what they could be to try to help influence the judge not to give such a severe sentence." Ex. D4 at 82.

The post-conviction court denied the claim, finding that counsel did not guarantee that the victim's family would recommend a specific sentence and that counsel was not ineffective for not telling Petitioner he could withdraw his plea when they did not make a sentencing recommendation. Ex. D2 at 265. The court stated, "The Court finds that

counsel would not have had any reason to apprise Defendant of his "right" to withdraw his plea as a specific sentence recommendation was never promised." *Id.* The court also noted that "according to counsel's strategy, it was more beneficial for the victim's family to leave the sentence to the discretion of the Court than to recommend a specific sentence." *Id.* Petitioner appealed denial of this claim and the First District Court of Appeal affirmed per curiam without a written opinion. Ex. D9. *See* <u>Griego v. State</u>, 207 So. 3d 224 (Fla. 1st DCA 2016) (table).

Respondent contends that this claim is unexhausted and procedurally defaulted because Petitioner failed to allege any federal constitutional grounds in his state court proceedings. ECF No. 47 at 20-21. Respondent is correct that, in the state courts, Petitioner cited only his procedural rights under Florida Rule of Criminal Procedure 3.170(f), supported by state law cases. Regardless of any procedural default, the claim is without merit and should be denied.

Petitioner has not demonstrated that the adjudication of the state court was objectively unreasonable or contrary to any clearly established federal law. The post-conviction court relied on the testimony of defense counsel, which the court found credible, that counsel did not guarantee the family would recommend any specific sentence. Ex. D2 at 265. Credibility

of witnesses is solely the province of the state court.  <u>Consalvo</u>, 664 F.3d at 845.  Moreover, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  <u>Richter</u>, 562 U.S. at 102.  As noted earlier, the federal court employs a "highly deferential standard for evaluating state-court rulings," and the state court decisions will be given the benefit of the doubt.  <u>Pinholster</u>, 563 U.S. at 181.

The post-conviction court's denial of relief was based on competent substantial evidence which he found credible.  Further, and for the same reasons discussed in Ground 3, *supra*, Petitioner could not go behind the sworn testimony that he read and understood his plea agreement, in which he confirmed that his plea was not based on any promises.  He also confirmed that he was satisfied with the services of his attorney.  Ex. B1 at 34.  Representations made during the plea colloquy carry a strong presumption of verity.  *See* <u>Blackledge</u>, 431 U.S. at 73-74 ("[T]he representations of the defendant, his lawyer, and the prosecutor at [a plea] hearing, as well as any findings made by the judge accepting the plea,

constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity.").

Notwithstanding any failure to exhaust a constitutional claim in state court, Petitioner has failed to demonstrate entitlement to habeas relief under § 2254 and Ground 3 should be denied.

## <u>Ground 4: Brady Violation/Ineffective Assistance of Counsel</u>

Petitioner contends that the State committed a <u>Brady</u>[13] violation in failing to disclose photographs of the crash site taken on the night of the crash that Petitioner argues would have supported a defense.  ECF No. 7 at 12.  He also argues that defense counsel rendered ineffective assistance for failing to advise him of the existence of the photographs, and that had they been provided to him, he would not have pled guilty.[14]  *Id.*  Petitioner raised both these arguments in the state court, although he did not cite any federal authority or federal constitutional basis for his contention concerning counsel failing to inform him of the existence of crime scene

---

[13] <u>Brady v. Maryland</u>, 373 U.S. 83, 87 (1963) (holding that failure to disclose material evidence favorable to the accused violates due process).  Evidence is material if there is a reasonable probability that had the evidence been disclosed, the result of the proceeding would have been different.  <u>Strickler v. Greene</u>, 527 U.S. 263, 280 (1999).

[14] In the alternative, Petitioner argues that his <u>post-conviction</u> counsel rendered ineffective assistance by not requesting a continuance to allow for hiring a defense expert to analyze the crash and provide a report.  ECF No. 7 at 13.  This claim is not cognizable on federal habeas review.  *See* <u>Lambrix v Sec'y, Dep't of Corr.</u>, 756 F.3d 1246, 1262-63 (11th Cir. 2014).

photographs.  *See* Ex. D1 at 7, 26 (motion, claim 4 and claim 10(b)); Ex.

D6 at 27-30 (initial brief).  Regardless of any failure to exhaust a federal

claim concerning ineffective assistance of counsel in regard to the crime

scene photographs, both claims are without merit and should be denied.

An evidentiary hearing was held on these claims at which Petitioner

testified that he was never told there were photographs of the crash site,

Ex. B4 at 18, and that he asked his counsel for photographs of the crash

site, but "from what my attorney told me is that there were none I believe, I

guess, so he didn't have them in his possession I guess."  *Id.*  Petitioner

testified, "I did inquire about them, and he did advise that he didn't have

them, that there were no - - that he had no photos showing such."  *Id.* at 19.

Petitioner said he received copies of some crash photos from a third party

and "that's when I became aware of the existence of these photos."  *Id.*  He

testified that he made a public records request to the State Attorney and

was told they had several CDs of photos, which his mother obtained and

made copies for him.  *Id.* at 19-20.  Petitioner presented an expert who

testified that he had reviewed the photographs and opined that a

reconstruction expert, had one been presented, could have been "possibly

favorable to Defendant."  *Id.* at

Defense counsel testified at the evidentiary hearing that he did receive copies of photographs from the State.  Ex. B4 at 72.  He testified that he received over 600 photographs on CD and 240 photographs attached to a Florida Department of Law Enforcement report.  The photos he received included photographs of the crash scene at night.  *Id.* at 72-73, 82-83, 93.  Counsel testified he shared everything that he had with Petitioner.  *Id.* at 73.

The post-conviction court denied the claims, concluding that Petitioner did not prove that a Brady violation occurred in that counsel testified he received many photographs from the State and shared them with Petitioner and Petitioner did not establish that the photographs he received on CDs from the State were different than those shown to him by counsel.  Ex. D2 at 269.  The court found that "all photographs were disclosed during discovery" and that Petitioner's unsupported claim that an expert could use the "undisclosed" photographs to dispute the State's accident report failed.  *Id.*

In addition, as Respondent points out, Brady is not implicated at the plea stage of a criminal proceeding.  *See, e.g.,* United States v. Ruiz, 536 U.S. 622, 629 (2002) (holding that the Constitution does not require disclosure before entry of a guilty plea of the same useful information that it

must disclose prior to a trial; that information relates to the fairness of a

trial, not the voluntariness of a plea).  *See also* <u>Young v. Florida</u>, No.

8:08cv707-T27TGW, 2011 WL 3875412, at *12 (M.D. Fla. Aug. 30, 2011)

("[T]he Supreme Court has not extended <u>Brady</u> to proceedings in which the

defendant enters a plea of guilty.").  Moreover, "[a] defendant is not entitled

to withdraw his plea merely because he discovers long after the plea has

been accepted that his calculus misapprehended the quality of the State's

case . . . ." <u>Matthew v. Johnson</u>, 201 F.3d 353, 369 (5th Cir. 2000) (quoting

<u>Brady</u>, 397 U.S. at 757).  The Supreme Court has given finality to guilty

pleas by precluding claims of constitutional deprivations occurring prior to

entry of the plea.  <u>Tollett v. Henderson</u>, 411 U.S. 258, 267 (1973).

As to Petitioner's claim that defense counsel rendered ineffective

assistance by failing to advise him of the crime scene photographs, the

post-conviction court concluded that counsel's testimony was credible that

he received the photographs and shared them with Petitioner.  Ex. D2 at

286.  The court further concluded that prejudice was not established

because "[a]t best, Defendant presented a person who is not even an

expert in motor vehicle reconstruction to say that he thought possibly an

accident reconstruction would have been favorable to Defendant."  *Id.* at

287.  The court found, as counsel testified, that an accident reconstruction

would have done little if anything to refute the charge of DUI manslaughter or leaving the scene of the crash, "considering the strong evidence in this case." *Id.*  Thus, the state court found no deficient performance and no showing of prejudice under <u>Strickland</u>.  The appellate court affirmed denial of both these claims without discussion.  Ex. D9.

For the foregoing reasons, Petitioner has not demonstrated that the adjudication by the state court resulted in a decision that is contrary to or an unreasonable application of clearly established federal law as determined by the United States Supreme Court, or that it was an unreasonable determination of the facts in light of the state court record. Habeas relief under § 2254 on Ground 4 should be denied.

## **Ground 5: Failure to Advise/Misadvice Regarding Defenses**

In this ground, Petitioner contends that his defense counsel rendered ineffective assistance prior to the plea for failing to advise him that the law concerning the charge of leaving the scene of a crash involving a death required that he have knowledge of the injury before he left the scene. ECF No. 7 at 15.  He also argues that counsel rendered ineffective assistance for failing to advise him of a defense to the charge where leaving the scene of the crash is the only way to call for assistance.  *Id.*  He further argues that his counsel rendered ineffective assistance in advising

him to plead guilty because, in light of the circumstances of the offense and the law, there was no factual basis for the crime.  *Id.*

Respondent contends that although Petitioner raised similar claims in the state court in his post-conviction claims 5 and 12, he failed to alert the state courts of any federal constitutional grounds for the claim, rendering the claims unexhausted.  ECF No. 47 at 26-27.  Notwithstanding any procedural default, the claim is without merit and should be denied.

The postconviction court held an evidentiary hearing on this claim at which Petitioner and defense counsel testified.  The post-conviction court subsequently denied the claim.  Ex. D2 at 269-74.  Petitioner asserts that the post-conviction judge "ultimately found that Petitioner's trial counsel did not advise defendant of such relevant information (Order p. 20) but that the Petitioner had no viable defense to the charge of leaving the scene of the accident therefore counsel's omission was not deficient (Order p. 21)." ECF No. 7 at 15.  This mischaracterizes the post-conviction court's findings.  After relating the testimony of both Petitioner and defense counsel at the evidentiary hearing, the post-conviction order states:

> The Court finds counsel's and Defendant's testimony credible that **Defendant's position** was that he did not know that he hit a person.  The Court also finds Ms. Griego's [**Petitioner's mother's**] testimony credible that counsel did not discuss with **her** any defenses to the leaving the scene of an accident charge.  Based on the evidence before this Court, the

> Court finds that Defendant did not have any viable defenses to
> the leaving the scene of the accident charge.  By Defendant's
> own admission at [the] evidentiary hearing, he pulled over at
> the Tom Thumb store not to call 911 or law enforcement for
> help, but because his van was disabled. . . .  This testimony,
> paired with Defendant's statement that he hit somebody, his
> laughter, and then changing his statement to say he thought he
> hit something, would have only shown that Defendant was
> concerned for his own welfare and not that of the victim when
> he stopped at the Tom Thumb store. . . .  As there was no
> viable defense to leaving the scene of an accident given the
> circumstances of this case, Defendant has failed to
> demonstrate that counsel was deficient for failing to advise of
> any defenses to the charge.

Ex. D2 at 273-74 (pages 20-21 of order denying post-conviction relief)

(emphasis added).  Thus, the post-conviction court found only that it was

Defendant's <u>position</u> that he did not know he hit someone and that under

the circumstances of the offense, including the lack of viable defense,

defense counsel was not deficient.

Petitioner alleged in state court and in this Court that counsel's

alleged deficient advice rendered his plea involuntary.  This claim is belied

by the record.  In the plea form signed by Petitioner, he confirmed that he

had read the information and understood the charges.  Ex. B1 at 34.

Petitioner also confirmed that he understood that by entering a plea he was

waiving, *inter alia*, his rights to plead not guilty; to go to trial by jury; to

present any and all defenses he may have; and to appeal all matters

relating to the judgment including guilt or innocence.  *Id.*  He confirmed that

he was entering the plea voluntarily and not due to any threats or promises. *Id.* The form expressly stated, "[M]y attorney, the Court and the prosecutor have not made any promises nor have I relied on any representations as to actual time I would serve in entering this plea agreement." *Id.*

At the plea hearing, held on the same day that Petitioner signed the plea agreement form, he testified under oath that he had a chance to read the plea agreement and that he signed it. Ex. B2 at 3-4. He testified he understood all the terms of the agreement and had discussed it with his attorney, and agreed that his attorney had discussed the "possible defenses in the case" and that he was comfortable with entering the plea of guilty. *Id.* at 5-6. Petitioner testified that no one had forced him to enter the plea agreement, and that he understood all the rights he was waiving. *Id.* at 5. The record conclusively refutes Petitioner's allegations that his plea was not freely and voluntarily entered. *See* Salerno v. Sec'y, Dep't of Corr., No. 5:11-cv-402-OC-10PRL, 2014 WL 12694162, at *7 (M.D. Fla. Sept. 10, 2014) (holding that the record of plea agreement and colloquy refutes claim that plea was not voluntary even though defendant argued that trial counsel told him that there was no viable defense to the charges, never informed of the elements of the crime, and never substantiated that

there was a factual basis for the plea) (citing <u>Gillis v. State</u>, 807 So. 2d 204,

205 (Fla. 5th DCA 2002)).

Petitioner cannot go behind the plea agreement and his sworn

testimony that he was fully informed, was waiving any defenses, and was

entering the plea voluntarily to offenses for which he agreed there was a

factual basis.  Moreover, even if counsel failed to advise him of any

defenses to the charge—or advised him there were no viable defenses—

that does not render a guilty plea involuntary.  The Court in <u>United States v.</u>

<u>Ortiz-Sanchez</u>, 138 F. App'x 921 (9th Cir. 2005), has explained:

> [Defendant] argues that he did not enter the plea agreement
> knowingly and voluntarily because, in entering the plea
> agreement, he relied upon his attorney, who, Ortiz-Sanchez
> maintains, rendered ineffective assistance by incorrectly
> advising Ortiz-Sanchez that there were no viable defenses to
> the charge.
>
> This does not render his plea other than knowingly and
> voluntarily made.  *See* <u>United States v. Nguyen</u>, 235 F.3d 1179,
> 1183-84 (9th Cir. 2000) (rejecting the defendant's "challenge to
> the knowingness and voluntariness of his waiver [on the
> ground] that his trial counsel 'erroneously advised him that
> under the law his position that he was not liable or responsible
> . . . was incorrect,' " and holding that the defendant's "attempt to
> make an end-run around his waiver by repackaging substantive
> challenges to his conviction as going to the voluntariness of his
> plea would render the waiver a nullity"); <u>United States v.</u>
> <u>Baramdyka</u>, 95 F.3d 840, 844 (9th Cir. 1996) ("The record
> shows that [the defendant] entered into the plea agreement and
> waiver of appeal knowingly and voluntarily. . . .  That [the
> defendant] may have been unaware of the fact that he had an

affirmative defense . . . does not alter this analysis.").

*Id.* at 922.

Petitioner contends he would have insisted on going to trial on the charge of leaving the scene of the crash involving a death if counsel had advised him of the requirements of proof and possible defenses. However, he mischaracterizes what that proof requires. He argues that counsel failed to advise him of a defense that he had no knowledge of the injury. However, the Standard Jury Instruction for the offense in effect at the time Petitioner entered his plea required a jury to find, in pertinent part, that the defendant "knew, or **should have known from all of the circumstances, including the nature of the crash**, of the injury to or death of the person." *See* Fla. Std. Jury Instr. (Crim.) 28.4 (2008) (emphasis added). Thus, the jury could have evaluated the totality of the circumstances surrounding the crash, including the nature of the crash and conduct of the defendant, to determine if the defendant "should have known" of the injury or death. In his reply, Petitioner cites to a more recent decision in State v. Dorsett, 158 So. 3d 557 (Fla. 2015), and argues that Dorsett requires the State to prove actual knowledge of the injury in order to prove a violation of section 316.027(1)(b), Florida Statutes. ECF No. 59 at 67. However, Dorsett held that a driver is not guilty unless he had actual knowledge that there was a

crash and that he knew or should have known from the nature of the accident that there was a resulting injury or death. *See also* Pitts v. State, 227 So. 3d 674, 677 (Fla. 1st DCA 2017) ("A driver is not guilty unless he had actual knowledge there was a crash and knew—or should have known from the nature of the accident—that there was a resulting injury or death.") (citing State v. Dorsett, 158 So.3d 557, 560 (Fla. 2015).

The evidence was not in dispute that Petitioner had actual knowledge he was involved in a crash—his airbags deployed and his windshield was smashed. The evidence would show he did not stop to see if whatever or whomever he hit needed assistance, but instead drove to a convenience store. Once there, he first announced to the clerk that he had hit someone but he did not attempt to contact law enforcement or seek medical assistance for the victim. Even if he had been made completely aware that the statute required proof that he had actual knowledge of the crash and that he "knew or should have known" of an injury or death, a decision to proceed to trial in light of the evidence cannot be assumed. The circumstances surrounding both the crash and the entry of the plea leads to the conclusion that, in light of the evidence that he did leave the crash scene without stopping to determine if assistance could be rendered, there is no reasonable probability that Petitioner would have insisted on going to

trial.  *See* Hill v. Lockhart, 474 U.S. 52, 59 (1985).  However, a "mere

allegation" by the defendant that he would have insisted on going to trial,

although necessary, "is ultimately insufficient to entitle him to relief."  Miller

v. Champion, 262 F.3d 1066, 1072 (10th Cir. 2001).  The Court in Miller

held that that defendant's mere allegation that he would have insisted on

trial but for counsel's errors, although necessary, is ultimately insufficient

and the Court looks to factual circumstances surrounding the plea to

determine whether the defendant would have proceeded to trial.  *Id.  See*

*also* Jennings v. Crosby, No. 8:05-cv-885-T-24TGW, 2006 WL 2425522, at

*8 & n.4 (M.D. Fla. Aug. 21, 2006).

Petitioner has failed to demonstrate that the adjudication of the state

court resulted in a decision that was objectively unreasonable, contrary to

or a misapplication of clearly established federal law, or an unreasonable

determination of the facts in light of the record.  Habeas relief on Ground 5

should be denied.

### Ground 6: Failure to Advise/Misadvice as to Evidence

Petitioner contends that his defense counsel rendered ineffective

assistance by failing to advise him or misadvising him concerning

"favorable" evidence of pay telephone records at the convenience store

that would have shown he was attempting to seek help from his employer

because he thought he hit a sign with his work van.  ECF No. 7 at 20.  He argues that his counsel could not remember if the records he had were from the telephone inside the store or out, but that counsel believed that because it was not a call to 911, Petitioner did not have a defense of seeking help for the victim.  *Id.* at 21.  He also argues that the statute does not require him to call 911 to meet his obligation to render aid and that his alerting the convenience store clerk to the crash did result in a call by the clerk to law enforcement.  *Id.*  In a second aspect to this claim, Petitioner argues that counsel misadvised him concerning a 12-year plea deal.  *Id.* at 20.

Respondent contends that both these claims were unexhausted because, but for a single footnote in the initial brief on appeal alleging that the pay telephone records would have established a credible defense, (Ex. D6 at 32), Petitioner otherwise abandoned his claims on appeal from denial of relief.  ECF No. 47 at 28.  Regardless of any failure to alert the appellate court to a federal claim of ineffective assistance in regard to the pay telephone phone records or failure to advise regarding a plea offer, this ground is without merit and should be denied.

At the evidentiary hearing on Petitioner's post-conviction claims, defense counsel testified that he did receive some telephone records in the

case but could not remember if they were from the telephone in the store or the outside pay telephone. Ex. D4 at 93. Counsel explained that regardless of which telephone records he obtained, the problem was that Petitioner did not use either to call law enforcement about the crash or to obtain assistance for the victim. Instead, he was trying to call his employer to seek help for himself. *Id.* at 89, 74. The post-conviction court found counsel's testimony credible and concluded that even if counsel had obtained the pay telephone records showing a call or attempted call to Petitioner's employer, that would not have established a defense to the charge of leaving the scene of a crash involving death. Ex. D2 at 279. The court also found that even if the records had been obtained, Petitioner failed to demonstrate that he would have insisted on going to trial. *Id.*

As to the claim that defense counsel misadvised him about a 12-year plea offer, the post-conviction court denied that claim as well. *Id.* at 278-79. The court noted counsel's testimony at the evidentiary hearing that the State never made an offer in the case. Ex. D2 at 277 (citing Ex. D4 at 69). Counsel testified that he discussed the sentencing score sheet with Petitioner and his mother, which indicated the minimum possible sentence was 12 years and the maximum was 46 years. Ex. D4 at 69. He said Petitioner may have misinterpreted the minimum possible sentence as one

being offered by the State, but that was not an offer. *Id.* The post-

conviction court concluded that even if Petitioner and his mother mistakenly

believed there was a 12-year offer based on the minimum sentence shown

on the scoresheet, deficient performance by counsel was not shown. Ex.

D2 at 278. As the post-conviction court also correctly noted:

> Even if the Court had found counsel mistakenly identified the
> scoresheet as a twelve-year plea offer, Defendant still would
> not be entitled to relief. According to the evidence before the
> Court, Defendant was aware of the twelve-year plea deal
> "misunderstanding" prior to his decision to enter an open plea
> to the court.

Ex. D2 at 278.

Petitioner testified at the evidentiary hearing that on docket day on

January 31, 2008, prior to the entry of his plea on February 11, 2008, he

learned of the maximum possible sentence of 46 years for all the charges

and asked counsel what happened to the 12-year plea offer. Ex. D4 at 6.

He said counsel responded that "there never was a plea deal." Ex. D4 at 6-

7. Thus, Petitioner was aware of his misunderstanding of a plea offer many

days before he entered his guilty pleas in the case. In addition to Petitioner

being advised of his misunderstanding about any plea offer prior to entry of

his plea, the plea form sentence recommendation signed by Petitioner

states on the first page that there was "No Agreement with State." Ex. B1

at 34. Petitioner confirmed in the plea form that he had "not relied on any

representations as to actual time I would serve in entering this plea if I were to be incarcerated under the terms of the agreement." *Id.* Petitioner confirmed that the document apprised him of the maximum possible sentences for the offense to which he will plead. *Id.* Thus, based on the evidence in the state court record, the State court's findings and adjudication are not objectively unreasonable.

In view of the deference afforded to the state courts' adjudication of constitutional claims, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court. AEDPA requires 'a state prisoner [to] show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement.' " Burt v. Titlow, 571 U.S. 12, 16 (2013) (quoting Richter, 562 U.S. at 103). " 'If this standard is difficult to meet'—and it is—'that is because it was meant to be.' " *Id.* (quoting Richter, 562 U.S. at 102). "We will not lightly conclude that a State's criminal justice system has experienced the 'extreme malfunction' for which federal habeas relief is the remedy." *Id.*

Habeas relief is not warranted if the court finds that the state court merely applied federal law incorrectly; rather, relief is warranted only if that application was objectively unreasonable. *See* Cullen v. Pinholster, 563

U.S. 170, 202-03 (2011); <u>Safrany v. Sec'y, Dep't of Corr.</u>, No. 16-12203-C, 2016 WL 10520907, at *2 (11th Cir. Dec. 27, 2016) (not reported in F.3d). The Supreme Court has stated that unreasonableness is "a substantially higher threshold" than whether the state court's determination was incorrect. <u>Schriro</u>, 550 U.S. at 473. "The 'contrary to' or 'unreasonable application of' standard of the AEDPA is 'difficult to meet, because the purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.' " <u>Safrany</u>, 2016 WL 10520907, at *2 (quoting <u>Greene v. Fisher</u>, 565 U.S. 34, 38 (2011) (quotations omitted)).

When measured against these demanding standards, Petitioner has failed to demonstrate entitlement to relief under § 2254. Habeas relief on Ground 6 should be denied.

### Ground 7: Ineffective Assistance re Suppression of Blood Test

Petitioner contends that his defense counsel rendered ineffective assistance for failing to advise him of the "remedy of suppression" of his blood test results on the basis that the blood was drawn without a warrant.[15]  ECF No. 7 at 23.  He argues that if his counsel had advised him

---

[15] Petitioner also mentions having argued in his Rule 3.850 motion and having testified at the evidentiary hearing that his counsel failed to advise him of his right to

of the remedy of suppression he would have insisted on going to trial.  *Id.*
The record shows that when law enforcement arrived at the convenience
store after the crash, and based on the fact of a fatality, damages to
Petitioner's van, and Petitioner's conduct in resisting officers, the officer
determined probable cause existed to perform a blood draw.  Ex. B1 at 10.
A paramedic responded to perform the blood draw but Petitioner resisted
and had to be physically restrained.  *Id.*  The blood sample showed that
Petitioner had a blood alcohol test showing alcohol content of .180 and a
second test showing .185.  Ex. D4 at 64.

At the post-conviction evidentiary hearing, Petitioner testified that his
counsel failed to inform him that a motion to suppress could have been filed
alleging that under Florida law, he should have been advised of his right to
an independent blood test.  *Id.* at 34.  He did not request an independent
blood test from the officers at the scene.  Ex. D5 at 48.  He also testified
that his counsel failed to inform him of the right to have the blood draw
results suppressed due to the lack of a search warrant authorizing the test.
*Id.* at 35.  Petitioner testified that there were no exigent circumstances to
justify the warrantless blood draw.  *Id.*

---

suppression due to the fact that he was not given an opportunity for an independent
blood test under a Florida statute.  ECF No. 7 at 23.

Defense counsel testified at the evidentiary hearing that he discussed the issue with Petitioner that he was not given an opportunity for an independent blood test, but counsel was concerned that even if the test results were suppressed, the State could still prove Petitioner was intoxicated by testimony of the store clerk and others.  Ex. D4 at 76. Counsel testified the State could still present evidence of the state trooper who would testify that Petitioner was drunk and belligerent at the scene and the testimony of the store clerk who would testify that Petitioner came into the store and eventually said he "hit someone," then laughed and said he hit "something."  Ex. D4 at 65-66, 81. Counsel testified that the ambulance personnel would testify that Petitioner appeared intoxicated.  *Id.* at 66.

Counsel testified that the store clerk would also testify that when Petitioner came into the store, he stumbled around and appeared very intoxicated, with a smell of alcohol on him.  *Id.* at 73; Ex. B1 at 8.  He was in the store for about 15 minutes without having mentioned being involved in a crash.  Ex. D4 at 80.  An officer on the scene stated that Petitioner appeared very intoxicated.  Ex. B1 at 9.  Another officer who was present reported that Petitioner appeared extremely intoxicated, with slurred speech, and bloodshot and watery eyes.  Ex. B1 at 11.  Counsel was not

asked whether he and Petitioner discussed lack of a warrant as a ground for moving to suppress the blood draw.

The post-conviction court denied the claim, concluding that Defendant's testimony was not credible and that counsel's testimony was credible that he found no basis to move to suppress the blood draw on the grounds that Petitioner was not offered an independent blood test because the suppression, even if successful, would not have affected the outcome of the case. Ex. D2 at 285. The court concluded that counsel was not shown to have been deficient. The post-conviction court also concluded, erroneously, that the claim that counsel failed to advise Petitioner of the right to seek suppression on the basis of lack of a warrant was procedurally barred because it was not included in the Rule 3.850 motion. This is incorrect, as the claim was included in the motion as Claim 9(b). Ex. D1 at 184. Even so, the post-conviction court went on to find that the claim was without merit because section 316.1933, Florida Statutes, provides that an involuntary blood draw may be taken from a suspected drunk driver when the vehicle has caused death or serious bodily injury to another person. Ex. D2 at 285. Section 316.1933(1)(a), Florida Statutes, provided that

> If a law enforcement officer has probable cause to believe that
> a motor vehicle driven by or in the actual physical control of a
> person under the influence of alcoholic beverages, any
> chemical substances, or any controlled substances has caused

the death or serious bodily injury of a human being, a law
enforcement officer shall require the person driving or in actual
physical control of the motor vehicle to submit to a test of the
person's blood for the purpose of determining the alcoholic
content thereof or the presence of chemical substances as set
forth in s. 877.111 or any substance controlled under chapter
893. The law enforcement officer may use reasonable force if
necessary to require such person to submit to the
administration of the blood test. The blood test shall be
performed in a reasonable manner. Notwithstanding s.
316.1932, the testing required by this paragraph need not be
incidental to a lawful arrest of the person.

In 2008, when counsel was advising Petitioner prior to trial or a plea,

Florida law held that section 316.1933 was not unconstitutional on its face

or as applied where the officer had probable cause to believe that the driver

had caused the death of another person and that the driver was under the

influence of alcohol. Jackson v. State, 456 So. 2d 916, 919 (Fla. 1st DCA

1984); see also State v. McInnis, 581 So. 2d 1370, 1373 (Fla. 5th DCA

1991) (recognizing no constitutional right not to have blood drawn for

testing by brute force and against suspect's will); State v. Langsford, 816

So. 2d 136, 138-39 (Fla. 4th DCA 2002) (holding forcible blood extraction

from defendant does not violate Fourth Amendment when defendant is

under arrest for DUI provided there is probable cause to arrest defendant

for DUI, and blood is extracted in reasonable manner by medical

personnel, pursuant to medically-approved procedures).

Petitioner relies on Schmerber v. California, 384 U.S. 757, 767 (1966), which held that a blood draw conducted at the direction of the police is a search and seizure under the Fourth Amendment. ECF No. 7 at 23. The United States Supreme Court upheld the constitutionality of a warrantless blood draw in Schmerber when the officer reasonably believed that the delay involved in securing a warrant would result in the dissipation of alcohol in a driver's blood. *Id.* at 772. Forty-seven years later, in Missouri v. McNeely, 569 U.S. 141 (2013), the Supreme Court clarified Schmerber, holding that the metabolization of alcohol does not create a per se exigent circumstance justifying warrantless, nonconsensual blood testing in all DUI cases, though it is a relevant consideration in determining if exigent circumstances exist. McNeely, 569 U.S. at 164-65. The Florida court in State v. Liles, 191 So. 3d 484 (Fla. 5th DCA 2016), explained that "[a]fter McNeely, law enforcement officers [are] no longer categorically permitted to obtain a suspect's blood sample without a warrant simply because the alcohol [is] leaving the suspect's blood stream." Liles, 191 So. 3d at 488 (citation omitted). The court in Liles further explained:

> Although we conclude that neither the consent nor exigent
> circumstances exceptions applies to these cases, we
> nonetheless reverse the suppression of the blood draws based
> on the police officers' good-faith reliance on section 316.1933.
> The exclusionary rule is a judicially-created remedy adopted to
> protect Fourth Amendment rights by deterring illegal searches

and seizures.  Davis v. United States, 564 U.S. 229, 131 S. Ct. 2419, 2426, 180 L.Ed.2d 285 (2011).  It is intended to deter police misconduct, not to remedy the prior invasion of a defendant's constitutional rights.  Montgomery v. State, 69 So.3d 1023, 1033 (Fla. 5th DCA 2011).  Because the primary purpose of the exclusionary rule is to "deter future unlawful police conduct," Stone v. Powell, 428 U.S. 465, 484, 96 S. Ct. 3037, 49 L.Ed.2d 1067 (1976), the rule has not been applied in certain circumstances, such as when an officer acts in objectively reasonable reliance on a subsequently invalidated statute, Illinois v. Krull, 480 U.S. 340, 355, 107 S. Ct. 1160, 94 L.Ed.2d 364 (1987).

Applying the objective standard of reasonableness mandated by Krull to the facts presented here, we conclude that, before McNeely, it was reasonable for the officers to have a good-faith belief in the constitutional validity of a warrantless blood draw authorized by section 316.1933(1)(a).

*Id.* at 489.  McNeely was decided in 2013 and Petitioner entered his plea in 2008.  Counsel was not required to anticipate the changes in the law that later indicated a blood draw required a warrant.  Rambaran v. Sec'y, Dep't of Corr., 821 F.3d 1325, 1334 (11th Cir. 2016); United States v. Ardley, 273 F.3d 991, 993 (11th Cir. 2001); Lynch v. State, 254 So. 3d 312, 323 (Fla. 2018) ("Furthermore, under Strickland, claims of ineffective assistance of counsel are assessed under the law in effect *at the time of the trial.*" (emphasis in original)).  Accordingly, at that time counsel offered Petitioner any advice or made any strategic decisions concerning suppression of the blood draw results, counsel was not deficient in relying on the legality of the blood draw without a warrant pursuant to section 316.1933(1)(a), Florida

Statutes, and case law upholding that statute.  *See also* <u>Hammill v. Inch</u>,

No. 3:17cv 443/LAC/EMT, 2019 WL 885927, at *7-8 (N.D. Fla. Jan. 22,

2019), *report and recommendation adopted*, 2019 WL 885913, at *1 (N.D.

Feb. 22, 2019) (holding that at time of trial, section 316.1933 and case law

interpretations allowed warrantless blood draw; there is no reasonable

probability motion to suppress would have been granted; and trial counsel

was not required to predict how law will develop).

In view of the above, even if counsel had filed a motion to suppress

the blood test results for lack of a warrant, the claim would have had little

probability of success under Florida law because it was authorized by

section 316.1933(1)(a), Florida Statutes.  Further, as discussed in <u>Liles</u>, a

motion to suppress for lack of a warrant could also have been denied

based on the officer's good faith reliance on binding precedent that allowed

for such draws.  Regardless of whether counsel should have advised

Petitioner he could move to suppress the blood test results based on lack

of a warrant, Petitioner has not demonstrated that he would have insisted

on going to trial, as required by <u>Strickland</u>.  Because of the compelling

evidence of guilt on all the charges that could be offered by the law

enforcement personnel, ambulance personnel and the store clerk,

counsel's strategy was that Petitioner take responsibility and plead guilty in

hopes that the victim's family would recommend a lesser sentence or stay silent as to any harsh sentence. Counsel testified he discussed all the evidence of guilt with Petitioner and Petitioner was in agreement with the strategy. Ex. D4 at 84-85, 93-94.

Petitioner has not demonstrated that the denial of this claim in the state court was contrary to or an unreasonable application of any clearly established federal law as determined by the United States Supreme Court at the time of his plea or was an unreasonable determination of the facts in light of the record. Habeas relief on Ground 7 should be denied.

## Ground 8: Failure to Depose State Expert

In Ground 8, Petitioner contends that defense counsel rendered ineffective assistance prior to entry of the guilty plea by failing to depose the State's second proposed expert witness or advise Petitioner that the State had a second expert. ECF No. 7 at 25. He also argues that counsel was ineffective for failing to demand that the State comply with discovery procedures by producing the "substance" of the new expert's testimony. *Id.*

In his Rule 3.850 motion in state court, Petitioner argued that counsel rendered ineffective assistance by failing to depose or investigate Perry Ponder, the second reconstruction expert hired by the State, Ex. D1 at 194-95, and by failing to object to the State's failure to produce an accident

reconstruction report from the expert. Ex. D1 at 189. An evidentiary

hearing was provided after which the post-conviction court denied the

claims. The court stated in pertinent part, "In regard to the State's failure to

provide the reconstruction report of State witness Perry Ponder, credible

evidence was submitted at [the] evidentiary hearing that Mr. Ponder never

created a reconstruction report. The State is not obligated to produce non-

existent reports during discovery. . . . As no discovery violation existed,

counsel was not deficient for failure to object to discovery violations." Ex.

D2 at 288 (citing Ex. D4 at 39, 79).

Respondent contends that denial of Petitioner's claim concerning

counsel's alleged failure to obtain discovery of an accident report by

Ponder was abandoned on appeal when Petitioner appealed denial of post-

conviction relied. In his brief on appeal, Petitioner cited only the post-

conviction court's denial of the claim that defense counsel was deficient for

failing to depose or investigate the expert. ECF No. 47 at 33. Respondent

contends that the claim regarding discovery of an accident report is

therefore unexhausted and procedurally defaulted. Regardless of any

procedural default, as explained by the post-conviction court, the claim is

without merit and should be denied. There was no accident report in

existence to be disclosed in discovery.

The second portion of Ground 8 alleging that his defense counsel

rendered ineffective assistance was also denied by the state postconviction

court, Ex. D2 at 289-90, and denial was affirmed on appeal.  Ex. D9.  In

denying that claim in state court, the judge noted that Petitioner testified

that counsel did not depose Ponder to discover the substance of his

testimony and that Petitioner entered a guilty plea without knowing the

evidence against him.  Ex. D2 at 290.  The court noted that counsel

testified that he did not feel it was necessary to depose Ponder given the

facts of the case and that even if the circumstances of the crash were

reconstructed, given the fact of Petitioner's intoxication and leaving the

scene of the crash, the question of the site of impact was not the true issue

in the case.  *Id.*  The postconviction court found this testimony of both

Petitioner and counsel credible, but concluded:

> The Court further finds that counsel's decision not to depose
> Mr. Ponder was both reasonable and strategic, considering the
> facts of this case.  Defendant has provided no evidence to
> show that Mr. Ponder's deposition would have changed the
> underlying facts of Defendant's case.  Defendant was
> intoxicated when he struck and killed the victim and then left the
> scene of the accident. Defendant is unable to demonstrate that
> counsel was deficient or Defendant would not have entered a
> plea if Mr. Ponder were deposed.  Defendant is not entitled to
> relief as to this claim.

Ex. D2 at 291.  This adjudication by the post-conviction court, and

affirmance by the state First District Court of Appeal, has not been shown

to be objectively unreasonable.  It is not contrary to or an unreasonable

application of any clearly established federal law as determined by the

Supreme Court or an unreasonable determination of the facts in light of the

record.  Habeas relief for Ground 8 should be denied.

<u>**Ground 9: Disproportionate Sentence**</u>

Petitioner contends that his sentence of eight years plus ten years

probation for the offense of leaving the scene of a crash involving a death

is disproportionate in violation of the Eighth Amendment and violates equal

protection.  ECF No. 7 at 28.  He challenges the rationality of a legislative

scheme that makes violation of section 316.027(1)(b) subject to a

maximum sentence of 30 years while the offense of leaving the scene of a

crash resulting in injury, not death, is subject to a sentence of only five

years; and the offense of failing to render aid or information after a crash

found in section 316.062 is a non-criminal offense punishable by only a

fine.  *Id.* at 30.  He raised a similar claim in the state court in an Amended

Motion to Correct Illegal Sentence filed pursuant to Florida Rule of Criminal

Procedure 3.800(a).  Ex. F1 at 54-58.  Respondent contends the claim is

procedurally defaulted because the state court found the claim of

unconstitutional sentence not cognizable in a proceeding under Rule

3.800(a), citing <u>State v. Spriggs</u>, 754 So. 2d 84 (Fla. 4th DCA 2000).  Ex.

F1 at 68.  The state appellate court affirmed dismissal of the claim without

discussion.  Ex. F4.  Petitioner attempted to raise a similar claim in his

second or successive Rule 3.850 motion, which motion was found untimely

and procedurally barred.  Ex. G1 at 31, 102.

     The Florida Fourth District Court of Appeal held in Spriggs and in

several other cases that a Rule 3.800 motion was not the proper vehicle for

challenging a sentence on constitutional grounds that the sentence was

disproportionate and violated the Eighth Amendment.  Spriggs, 754 So. 2d.

at 84; State v. Smith, 360 So. 2d 21, 23 (Fla. 4th DCA 1978).  However,

this Court has declined to defer to the state court's application of a

procedural bar to the Eighth Amendment claim because other Florida

courts have found that claims of an unconstitutional sentence can be raised

in a Rule 3.800(a) motion.  *See* Owens v. Fla. Dep't of Corr. Sec'y, No.

1:16cv254/WTH/EMT, 2018 WL 5794185, at *21 (N.D. Fla. May 1, 2018*),

report and recommendation adopted*, 2018 WL 5792820, at *1 (N.D. Fla.

Nov. 5, 2018).[16]  As this Court explained in Owens:

---

[16] This Court in Owens explained: "However, in State v. Mancino, 714 So. 2d
429, 433 (Fla. 1998), the Florida Supreme Court held that "[a] sentence that patently
fails to comport with statutory or constitutional limitations is by definition 'illegal,' " and
thus may be challenged in a Rule 3.800 motion.  *Id.* (citing Hopping v. State, 708 So. 2d
263, 265 (Fla. 1998) ('[W]here it can be determined without an evidentiary hearing that
a sentence has been unconstitutionally enhanced in violation of the double jeopardy
clause, the sentence is illegal and can be declared so at any time under rule 3.800.')).  In
2014 (prior to the circuit court's deeming Petitioner's claim procedurally barred), the

The Eighth Amendment prohibits the imposition of cruel and unusual punishments.  *See* U.S. Const. amend. VIII. "[T]he Eighth Amendment contains a 'narrow proportionality principle' that 'applies to noncapital sentences.' " Ewing v. California, 538 U.S. 11, 20, 123 S. Ct. 1179, 155 L. Ed. 2d 108 (2003) (quoting Harmelin v. Michigan, 501 U.S. 957-997, 111 S. Ct. 2680, 115 L.Ed.2d 836 (1991) (Kennedy, J., concurring in part and concurring in judgment)).  A non-capital sentence violates the Eighth Amendment only if it is grossly disproportionate to the offense conduct.  United States v. Farley, 607 F.3d 1294, 1343 (11th Cir. 2010).

Generally, sentences within the statutory limits are neither excessive, nor cruel and unusual under the Eighth Amendment. *See* United States v. Flores, 572 F.3d 1254, 1268 (11th Cir. 2009); United States v. Moriarity, 429 F.3d 1012, 1024 (11th Cir. 2005).  This is so because courts accord substantial deference to the legislature, as it possesses "broad authority to determine the types and limits of punishments for crimes." Solem v. Helm, 463 U.S. 277, 289, 103 S. Ct. 3001, 77 L.Ed.2d 637 (1983); *see also* United States v. Mozie, 752 F.3d 1271, 1290 (11th Cir. 2014).  Further, the Supreme Court has held that the mandatory nature of a sentence is irrelevant for Eighth Amendment purposes.  Harmelin, 501 U.S. at 994-995, 111 S. Ct. 2680; *id.* at 1006 (Kennedy, J., concurring); *see also* Farley, 607 F.3d at 1343 (the fact that a non-capital sentence is statutorily mandated is irrelevant to the proportionality analysis). Instead, the sentence should be evaluated as if it were imposed by the sentencing court in the exercise of its discretion.  *See* Farley, 607 F.3d at 1343.

To determine if a non-capital sentence violates the Eighth Amendment, the court first compares the crime committed to the sentence imposed and determines whether any disparity creates an inference of gross disproportionality.  *See* Farley,

---

Florida Supreme Court held that a Rule 3.800(a) motion is an appropriate vehicle to present a constitutional attack on a defendant's sentence.  *See* Plott v. State, 148 So. 3d 90, 95 (Fla. 2014)." Owens v. Fla. Dep't of Corr. Sec'y, No. 1:16cv254/WTH/EMT, 2018 WL 5794185, at *21 (N.D. Fla. May 1, 2018), *report and recommendation adopted*, No. 1:16cv254-MW/EMT, 2018 WL 5792820 (N.D. Fla. Nov. 5, 2018).

607 F.3d at 1344. The defendant bears the burden of making the threshold showing of gross disproportionality. *See* United States v. Johnson, 451 F.3d 1239, 1243 (11th Cir. 2006). If the court determines that the defendant has made a sufficient threshold showing of gross disproportionality, the court may then compare the defendant's sentence with sentences imposed for other crimes in the same jurisdiction and sentences imposed for the same crime in other jurisdictions. *See* Farley, 607 F.3d at 1342, 1344.

The proportionality inquiry is guided by objective factors, including the gravity of the offense and the severity of the punishment. *See* Solem, 463 U.S. at 290-91, 103 S. Ct. 3001. The harm caused or threatened to victims or society and the culpability of the offender are relevant to the gravity of the offense. *See id.* at 292, 103 S. Ct. 3001. Successful challenges to the proportionality of non-capital sentences are very rare. *See* United States v. Flores, 572 F.3d 1254, 1268 (11th Cir. 2009).

Owens, 2018 WL 5794185, at *21-22 (footnotes omitted).

"All of these principles—the primacy of the legislature, the variety of penological schemes, the nature of our federal system, and the requirement that proportionality review be guided by objective factors—inform the final one: The Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime." Harmelin v. Michigan, 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring in part and concurring in the judgment).

Accordingly, in the present case, the factors of gravity of the offense and harm caused by the proscribed conduct supports the finding that the eight-year sentence Petitioner received plus probation was not grossly disproportionate to the crime. Leaving the scene of a crash resulting in death without stopping to render aid is a grave offense that presents a significant risk of harm to the victim and society. The Florida legislature in its judgment determined that it is an important public policy for the safety of the citizens that accident victims receive medical assistance as soon as possible. While the duty to stop and render aid is the same in crashes involving injury and crashes involving death, the Legislature decided that that the sanction is to be determined by the result of the crash. *See* State v. Dumas, 700 So. 2d 1223, 1226 (Fla. 1997) ("This result-driven sanction implicitly recognizes the possibility that a fleeing driver's failure to stop and render aid may be the reason that an injured person dies.").

This is not one of the rare or extraordinary cases in which gross disproportionality has been shown. The Eleventh Circuit noted in 2013 that it has never held that a prison sentence is disproportionate. United States v. Pizarro-Campos, 506 F. App'x 947, 950 (11th Cir. 2013) (unpublished) (citing United States v. Farley, 607 F.3d 1294, 1343 (11th Cir. 2010)). The United States Supreme Court has rarely held a sentence to be

disproportionate. The "gross disproportionality principle reserves a constitutional violation for only the most extraordinary case." *Id.* Farley, 607 F.3d at 1343-44 (quoting Lockyer v. Andrade, 538 U.S. 63, 77 (2003)). Moreover, "[a] sentence that falls well below the statutory maximum penalty may also be indicative of reasonableness." United States v. Estrella, 518 F. App'x 822, 828 (11th Cir. 2013) (unpublished). Petitioner's eight-year sentence falls well below the 30-year sentence authorized by the statute for the offense of leaving the scene of a crash involving a death and is not grossly disproportionate considering the gravity of the offense involving death and the purposes of the legislative scheme.

Petitioner also contends that the sentence is unconstitutional as a violation of equal protection because there is a non-criminal statute imposing no prison sentence that requires a driver in a crash involving injury, death, or property damage to give information and render aid. § 316.062, Fla. Stat. (2007). "Where an equal protection challenge does not allege that the challenged statute either singles out a protected class of individuals or impinges on a fundamental right, the provision is subject to rational-basis review." United States v. Guizamano-Cortes, 719 F. App'x 984, 985-86 (11th Cir. 2018) (citing United States v. Campos-Diaz, 472 F.3d 1278, 1280 (11th Cir. 2006)). "Under the rational-basis test, a law

does not violate equal protection so long as it is rationally related to a legitimate government interest." *Id.* "To pass the rational basis test, the legislation must have a legitimate purpose, and it must have been reasonable for lawmakers to believe that the use of the challenged classification would promote that purpose." United States v. King, 972 F.2d 1259, 1260 (11th Cir. 1992) (per curiam). Because of the highly deferential nature of rational basis review, legislative acts will be held unconstitutional only in exceptional circumstances. Doe v. Moore, 410 F.3d 1337, 1345 (11th Cir. 2005). Petitioner has not demonstrated that the sentencing provisions of section 316.027(1)(b) have no rational basis.

The Florida Supreme Court has explained that section 316.062, the non-criminal statute cited by Petitioner, imposes an affirmative duty on the driver involved in a crash to stop and provide certain information and aid, but it is section 316.027, Florida Statutes, that makes it a felony to fail to do so. Dumas, 700 So. 2d at 1225. Section 316.062 and section 316.027, while related, have different purposes and provide different penalties for failure to comply depending on the conduct of the driver and the nature of the damage. The statute criminalizes leaving the scene of a crash involving death for those persons who fail to stop and remain at the scene or as close as possible "until he or she has fulfilled the requirements of s.

316.062" and it treats those similarly situated drivers the same. Moreover, the state has a legitimate state interest in assuring that persons who are seriously injured in a crash are provided assistance as soon as possible. When a driver flees such a crash and does not meet his or her obligations under the statutes, and the victim dies as a result of a crash, a more severe sentence for this offense does not violate equal protection.

Petitioner has failed to demonstrate that his sentence for leaving the scene of a crash involving death is one of the "rare" cases in which the sentence is grossly disproportionate and unconstitutional. Nor has he demonstrated that the state legislature, by imposing a longer sentence for leaving the scene of a crash involving a death than it does for simply failing to meet the requirements of section 316.062, violates his right to equal protection. Denial of relief on this claim is not contrary to or an unreasonable application of the Supreme Court's clearly established law and habeas relief on Ground 9 should be denied.

## Ground 10: Warrantless Blood Draw

In his final ground, Petitioner contends that his conviction and sentence for resisting an officer without violence should be vacated because it violates his Fourth Amendment rights. ECF No. 7 at 32-33. He argues that under <u>Birchfield v. North Dakota</u>, 136 S. Ct. 2160 (2016), he

may not be criminally punished for refusing to submit to a blood draw.[17]  *Id.*

at 32.  Respondent contends that the claim is procedurally barred because

it was raised in Petitioner's Amended "Second or Successive" Motion for

Postconviction Relief, Ex. G1 at 32, which was denied because Petitioner

failed to allege a fundamental right that has been held to apply

retroactively, as required by Rule 3.850(b)(2).  Ex. G1 at 103.  The state

appellate court affirmed denial without discussion.  Ex. G211.  Respondent

contends that this claim was procedurally barred under state law and is

thus procedurally barred in this proceeding due to an independent and

adequate state procedural rule.  ECF No. 47 at 38-39.

Respondent also contends that the claim is not properly before the

Court in a § 2254 proceeding because Petitioner is no longer in custody for

the offense of resisting an officer without violence and Petitioner has not

provided the Court with a basis on which the claim can be reviewed.  ECF

No. 47 at 40.  The federal habeas statute gives the United States district

courts jurisdiction to entertain petitions for habeas relief only from persons

who are "in custody in violation of the Constitution or laws or treaties of the

---

[17]  Petitioner's conviction for resisting an officer without violence was not for violation of a statute making it an offense to refuse to submit to a blood draw, but was for violation of section 843.02, Florida Statutes (2007), which made it a misdemeanor offense to resist, obstruct, or oppose any officer in the lawful execution of any legal duty.

United States."  28 U.S.C. § 2254(a).  The Supreme Court has interpreted the statutory language as requiring that the habeas petitioner be "in custody" under the conviction or sentence under attack "at the time his petition is filed."  Maleng v. Cook, 490 U.S. 488, 490-92 (1989) (emphasis added) (citing Carafas v. LaVallee, 391 U.S. 234, 238 (1968)).

The "in custody" requirement is jurisdictional.  Stacey v. Warden, Apalachee Corr. Inst., 854 F.2d 401, 403 (11th Cir. 1988).  To satisfy the "in custody" requirement, "the habeas petitioner [must] be 'in custody' under the conviction or sentence under attack at the time [the] petition is filed."  Maleng, 490 U.S. at 490-91.  The Supreme Court explained: "We have never held . . . that a habeas petitioner may be "in custody" under a conviction when the sentence imposed for that conviction has fully expired at the time his petition is filed."  *Id.* at 491.  The Court in Maleng emphasized: "While we have very liberally construed the 'in custody' requirement for purposes of federal habeas, we have never extended it to the situation where a habeas petitioner suffers no present restraint from a conviction."[18]  *Id.* at 492.

---

[18] Petitioner does not allege and nothing in the record suggests that Petitioner is under any present or significant restraint on his liberty attributable to his conviction for resisting an officer without violence. *See, e.g.*, Krott v. Walton CI Warden, 727 F. App'x 649, 649 (11th Cir. 2018) (unpublished).  Collateral consequences, even if alleged, are not alone sufficient to confer jurisdiction.  Maleng, 490 U.S. at 491-92.  *See also* Van Zant v. Fla. Parole Comm'n, 104 F.3d 325, 327 (11th Cir. 1997) ("[A] petitioner may

The record in this case shows that Petitioner was no longer "in custody" for the conviction of resisting an officer without violence at the time he filed his federal habeas petition.  Petitioner received a sentence of 270 days in jail for the offense of resisting an officer without violence, to run concurrent with the sentence in Count One, both of which commenced in 2008.  Ex. B3 at 261.  His § 2254 petition was filed in 2017.  Petitioner argues in his reply that his § 2254 claim as to the conviction for which his sentence has expired is not barred based on the holding in Garlotte v. Fordice, 515 U.S. 39 (1995), which held that Garlotte could bring his habeas claim because he was serving consecutive sentences—unlike the Petitioner in Maleng—and the conviction and sentence under challenge was to be served before the other consecutive sentences commenced. Garlotte, 515 U.S. at 44-45.  The Court in Garlotte focused on the "core purpose of habeas review," noting that Garlotte's challenge would shorten his term of incarceration if he could prove unconstitutionality.  *Id.* at 47.

In the present case, Griego's 270-day sentence was concurrent with his sentence for Count One and did not postpone the commencement of

---

challenge an expired conviction only if, at the time of the filing of the petition, (1) the petitioner is incarcerated under a current sentence that (2) has been enhanced by the expired conviction.").  There is no indication that Petitioner's current sentence is enhanced due to his misdemeanor conviction for resisting an officer without violence.

any other sentences.  Thus, <u>Garlotte</u> does not control and this Court is without jurisdiction to consider Petitioner's challenges to the conviction and expired sentence for resisting an officer without violence.  *See also* <u>Sweet v. McNeil</u>, 345 F. App'x. 480, 482 (11th Cir. 2009) (holding that <u>Garlotte</u> is applicable only to consecutive sentences where invalidation of the conviction would advance the release date; district court lacked subject matter jurisdiction because petitioner was no longer "in custody" on the simple battery conviction when he filed his petition; petitioner's sentences on the two charges ran concurrently and petitioner's shorter sentence on the simple battery conviction expired prior to petitioner's filing his federal habeas petition) (unpublished); <u>Diaz v. State of Fla. Fourth Judicial Circuit ex rel. Duval Cnty.</u>, 683 F.3d 1261, 1264-65 (11th Cir. 2012) (holding that habeas petitioner, who was currently in federal custody, was not "in custody" pursuant to the state judgment subject to his collateral attack at the time he filed his federal habeas petition eight months after his state sentence fully expired; petitioner was not currently under any present restraint attributable to his state conviction; and any grant of relief would not serve to accelerate petitioner's release from his present federal confinement); <u>Reilly v. Sec'y, Fla. Dep't of Corr.</u>, No. 4:18cv253-WS/GRJ, 2019 WL 1302374, at *3 (N.D. Fla. Feb. 19, 2019) (dismissing for lack of

jurisdiction), *report and recommendation adopted*, 2019 WL 1302367 (N.D. Fla. Mar. 21, 2019), *appeal filed*, Reilly v. State of Fla., et al., No. 19-11948 (11th Cir. May 20, 2019).

It should also be noted that Petitioner entered a plea of guilty to the charge of resisting an officer without violence.  With limited exception not applicable to this ground, that plea foreclosed federal review of all non-jurisdictional error prior to the plea, including constitutional error which Petitioner argues in this ground.  *See* Tollett v. Henderson, 411 U.S. 258, 267 (1973) ("When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea."). Therefore, even if the Court had jurisdiction as to this claim, it lacks merit and should be denied.

Because the Court lacks jurisdiction to hear this claim challenging a conviction for which Petitioner is no longer in custody, Ground 10 should be dismissed.

## Conclusion

Based on the foregoing, Petitioner Anthony Rogelio Griego is not entitled to federal habeas relief.  Accordingly, Grounds 1 through 9 of the

amended § 2254 petition (ECF No. 7) should be denied.  Ground 10 should be dismissed for lack of jurisdiction.

## Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  Rule 11(b) provides that a timely notice of appeal must still be filed, even if the court issues a certificate of appealability.

Petitioner fails to make a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (explaining substantial showing) (citation omitted). Therefore, the Court should deny a certificate of appealability.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  The parties shall make any argument as to whether a certificate should issue by objections to this Report and Recommendation.

Leave to appeal in forma pauperis should also be denied. *See* Fed.

R. App. P. 24(a)(3)(A) (providing that before or after notice of appeal is

filed, the court may certify appeal is not in good faith or party is not

otherwise entitled to appeal in forma pauperis).

### Recommendation

It is therefore respectfully **RECOMMENDED** that the Court **DENY**

Grounds 1 through 9 of the amended § 2254 petition (ECF No. 7).  It is

recommended that Ground 10 be **DISMISSED for lack of jurisdiction**.  It

is recommended that Petitioner's motion to conduct discovery, for financial

assistance to hire an expert, for appointment of counsel, and to supplement

the record with material not presented in the state court, ECF No. 58, be

**DENIED**.  It is further **RECOMMENDED** that a certificate of appealability be

**DENIED** and that leave to appeal in forma pauperis be **DENIED**.

**IN CHAMBERS** at Tallahassee, Florida, on July 1, 2019.

**s/ Charles A. Stampelos**
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2).  A copy of the objections shall be served upon all other parties.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Fed.**

R. Civ. P. 72(b)(2). <u>**Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control**</u>. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a Report and Recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.